MANLEY, BENNETT & COMPANY v. WOODHAMS.

BROKERS — COMMISSION — PLEADING — AMENDMENT — OPENING STATEMENT.

   Order dismissing plaintiff's declaration in assumpsit for commission on sale of entire outstanding capital stock of corporate defendant on motion of individual defendant stockholders, filed at close of plaintiff's opening statement and after denial of plaintiff's motion to amend declaration is reversed.

REFERENCES FOR POINTS IN HEADNOTES
8 Am Jur, Brokers § 139 *et seq.*

Appeal from Calhoun; Steinbacher (Harold E.),
J. Submitted June 7, 1957. (Docket No. 37, Calendar No. 47,291.) Decided September 4, 1957.

Assumpsit by Manley, Bennett & Company, a copartnership, against Walter J. Woodhams, Ellie Woodhams and Carlyle Serr for commission on sale of corporate stock of Woodlin Metal Products Company, a Michigan corporation. Dismissed on motion following opening statement. Plaintiff appeals. Reversed.

*Warner, Norcross & Judd (Harold S. Sawyer* and *Joseph B. White,* of counsel), for plaintiff.

*Mackey & Ward,* for defendants.

SMITH, J. In this case we must construe a declaration in assumpsit to determine whether it states a cause of action against the individuals named defendants.[*] The trial court decided that it did not and dismissed the suit as to them after the plaintiff had completed his opening statement. The plaintiff appeals.

The controversy, in brief, related to the payment of a commission upon the sale of the corporate defendant. The declaration in its pertinent portions is as follows:

"5. On or about November 2, 1955, the plaintiff acting through its partner, the said John O. Mac-Farlane, was orally authorized by the said Walter J. Woodhams on behalf of the said Woodlin Metal Products Company and on behalf of himself and defendants Ellie Woodhams and Carlyle Serr individually that the same arrangement set forth in exhibits A and B attached hereto would apply to a proposed

_____
[*] The corporate defendant was dismissed as a party by the plaintiff on the first day of trial.

attempt by the plaintiff to secure a purchaser for the said Woodlin Metal Products Company by negotiating a sale of the same to Muskegon Motor Specialties Company, a Michigan corporation, having its principal office and place of business in Muskegon, Michigan.

"6. Negotiations ensued as a result of which the said Woodlin Metal Products Company was sold in its entirety to Muskegon Motor Specialties Company, for a total purchase price of $1,406,449.70, the final settlement and closing of sale taking place on March 19, 1956, pursuant to agreement reached on December 14, 1955. By agreement of the negotiating parties, the said Woodlin Metal Products Company was sold to the said Muskegon Motor Specialties Company through the sale of its entire outstanding capital stock instead of the sale of its assets as such.

"7. Throughout the negotiations of such sale and throughout the prior discussions and conferences between the plaintiff and the defendant Walter J. Woodhams and his attorney, Harold O. Love, the said Walter J. Woodhams and his said attorney were authorized to represent and did in fact represent Walter J. Woodhams individually, the defendant Ellie Woodhams, the defendant Carlyle Serr and the defendant Woodlin Metal Products Company.

"8. The plaintiff in accordance with the agreement of the said Walter J. Woodhams, as president of Woodlin Metal Products Company, individually and as agent for Ellie Woodhams, and Carlyle Serr, procured a purchaser for and negotiated the sale of Woodlin Metal Products Company through the sale of 100% of its outstanding capital stock to the said Muskegon Motor Specialties Company and in doing so performed all of the acts required by it to be done to entitle the plaintiff to the payment of a commission agreed to be paid to it by the said defendants acting through their representative, Walter J. Woodhams, said commission being in the amount of $70,322.48."

Exhibit A, referred to in paragraph 5 above, follows in its entirety:

## "WOODLIN METAL PRODUCTS COMPANY

"Marshall, Michigan
"December 16, 1954

"Mr. John O. MacFarlane
"1100 Buhl Building
"Detroit 26, Michigan

*"Dear Mr. MacFarlane:*

"This will serve as your authorization to enter into negotiations with representatives of Borg-Warner Corporation in connection with the purchase by them of the Woodlin Metal Products Company. For this purpose you will have the exclusive right for 90 days to negotiate the transaction. If, during the period of 90 days, it appears likely that additional time will be required to complete the negotiations, you will have such additional time, within limits, as may be necessary.

"In the event a purchase is consummated by the Borg-Warner Corporation, you will be entitled to receive 5% of the gross purchase price.

"Very truly yours,

"Woodlin Metal Products
Company
"(s) W. J. Woodhams
"Walter J. Woodhams,
President.

"WJW :vw"


Exhibit B, dated February 7, 1955, is in the same form, save that it contemplates a sale to the Mueller Brass Company.

At the close of the plaintiff's opening statement the defendants, pointing to the distinction between the sale of a corporation by sale of all of its capital

stock rather than by sale of its assets, moved for an order dismissing the case as to the individual defendants, on the ground that:

"Now no place in the declaration is there any allegation that the defendants Walter Woodhams, Ellie Woodhams or Carlyle Serr, as stockholders of the company, ever agreed to pay any commission on the sale of this stock * * * and for that reason no agreement being alleged in the declaration, we ask that the declaration be dismissed as to these defendants individually."

Plaintiff's counsel, in reply, asserted that the cause of action was clear and clearly stated, that "the defendant filed an answer to the declaration and denied the entering into the agreements, went through a pretrial conference, and was satisfied that the pleadings were in order, which was one of the questions raised there, and sat through the discovery depositions involving the parties," and that "certainly nobody was misled as to what the cause of action was or the proceeding." Relying primarily upon paragraph 8 of its declaration ("The plaintiff * * * and in doing so performed all of the acts required by it to be done to entitle the plaintiff to the payment of a commission agreed to be paid to it by the said defendants acting through their representative, Walter J. Woodhams"), plaintiff nevertheless offered to amend the declaration as might be required. This request was denied.

"*Mr. Sawyer:* * * * If the Court feels there is any question about that or there is any uncertainty in it, I should like at this time to move to amend the declaration to so state.

"*The Court:* In this circuit you stick with your pleadings.

"*Mr. Mackey:* They said they were satisfied.

"*The Court:* The pretrial statement, number 2, 'Plaintiffs announce that they do not desire any

amendments to their pleadings, and that same as filed raises the issues desired.' It says, the 'plaintiffs' alone. I don't know why it is down that way, but it is.

"*Mr. Sawyer:* If the court please, I am satisfied the pleadings state a cause of action as they stand. I can do no more than state that. I am satisfied of it."

The court thereupon found that there was "no allegation in here in the declaration to the effect that the individual stockholders authorized the payment of a 5% commission to the plaintiff for the sale of the stock," denied plaintiff's motion to amend, and granted the motion to dismiss.

It is well settled that on a motion to dismiss by the defendant for failure to state a cause of action all facts well pleaded in the declaration are admitted and every inference must be drawn in favor of the plaintiff and against the demurrant. *Doyle* v. *Kammeraad,* 310 Mich 233; *Vega* v. *Briggs Manfg. Co.,* 341 Mich 218; *Dodge* v. *Blood,* 299 Mich 364 (138 ALR 322); *Grand Central Market Corp.* v. *Jewish Children's Home,* 310 Mich 421; *Society of Good Neighbors* v. *Mayor of Detroit,* 324 Mich 22.

The plaintiff construes the above pleadings as setting up, first, an authorization to it to sell the company (upon "the same arrangement" set forth in exhibits A and B, as meaning upon 5% commission). It next pleads such sale through the sale of the entire outstanding stock, and it then asserts that in so doing it had done all required to entitle it to the commission "agreed to be paid to it" by the defendants. The commission not having been paid, suit followed.

Defendants view the declaration differently. They assert that "the same arrangement," referred to above, was a commission to be paid by the company, that it related to the sale of assets (not stock), and

that although the declaration speaks of a commission "agreed to be paid," nowhere in the declaration is there an allegation "that the individual shareholders ever agreed to pay any commission."

The success of the argument in the lower court represents a triumph of technicality over reasonable construction.

In ancient times pleading was a subtle craft, a jungle of "cumbersome, discursive, redundant and involved precedents." (Sunderland, The Michigan Judicature Act of 1915, 14 Mich L Rev 551, 553 [1916] ; see, also, Blume, American Civil Procedure [1955], § 2–02). The failure to use words of art was fatal. Forms were cast in rigid molds of great complexity. In the professional excitement of legal thrust and parry, as we created such logician's delights as the negative pregnant, the spectator standing in the wings, the litigant himself, was forgotten. Public and professional reaction, while slow in coming, was inevitable. The essential requirement of pleading came to be recognized as nothing more complicated than giving the other party reasonable notice of the claim or defense. As Sunderland, *supra,* puts it, "The purpose of pleading has ceased to be the exemplification of the subtleties of pleader's logic and has become the intelligible disclosure of the real nature of the respective claims of the parties."

In this jurisdiction the judicature act of 1915,* and court rules pursuant thereto, placed the emphasis squarely upon the notice feature of pleading, discarding ancient and technical tests, phrases and formulae:

"In the actions which are in this act retained, the forms of declaration now in common use may be employed; but no declaration shall be deemed insufficient which shall contain such information as shall

* PA 1915 No 314 (CL 1948, § 600.1 *et seq.* [Stat Ann § 27.1 *et seq.*]).

reasonably inform the defendant of the nature of the case he is called upon to defend." CL 1948, § 614.2 (Stat Ann § 27.812).

"The declaration shall contain such specific allegations as will reasonably inform the defendant of the nature of the cause he is called upon to defend." Mich Court Rule No 19, § 1 (1945).

In accordance therewith, as observed by Mr. Justice NORTH in *Spelman* v. *Addison*, 300 Mich 690, 702: "In recent years, at least, this Court has taken a liberal attitude in passing upon sufficiency of pleadings." The chief object of the declaration, we held in *Michigan Aero Club* v. *Shelley*, 283 Mich 401, 408 (1938 USAvR 134, 1 CCH Av 750), "is to apprise plainly the opposite party of the cause of action and the claim of plaintiff."

So tested, we cannot hold that the declaration before us does not contain "such information as shall reasonably inform the defendant of the nature of the case he is called upon to defend." The defendants here, we believe, were reasonably and adequately informed of the nature of the claim for damages within the purview of statute and court rules.

We are constrained, also, to observe that this matter was pending for many months, that discovery depositions had been taken and filed, that pretrial conference had been held, and that nowhere during these lengthy proceedings, so far as this record discloses, had defendants even intimated that the declaration did not contain such information as to "reasonably inform the defendant of the nature of the cause he is called upon to defend." It was not until the jury had been empaneled and opening statement made that the alleged fatal deficiency was made the subject of motion to dismiss. We take this occasion to point out to the profession that it was the

kind of debacle here experienced, resulting in delay of justice and unnecessary expense to all concerned, that the pretrial conference was, in part, intended to eliminate. If one of the parties to litigation is of the opinion that the pleadings are fatally defective it is his duty at this time (entirely independent of the doctrine of waiver by pleading over or going to trial without specifically raising the point) to raise the issue so that the matter may then and there be explored. We have passed the day when the art of pleading was a game of setting traps for the unwary and we do not intend to return to it. In the view we have taken of the case it is not necessary to pass upon the court's refusal to permit amendment, save to agree, with Honigman (Michigan Court Rules Annotated, p 243) that "there has been a constant trend for increasing liberality in the matter of granting amendments." Nor do we find it necessary, as requested by appellant, to instruct the trial court as to the scope of proper proofs at the trial to follow, or to anticipate error. Our doors, like the gates of hell, are always open.

Reversed. Costs to appellant.

EDWARDS, VOELKER, and BLACK, JJ., concurred with SMITH, J.

DETHMERS, C. J., and SHARPE, KELLY, and CARR, JJ., concurred in the result.