## KNICKERBOCKER v. SAMSON.

1. AUTOMOBILES—PEDESTRIANS—NEGLIGENCE—CONTRIBUTORY NEGLI-
GENCE—EVIDENCE—QUESTION FOR JURY.
    A jury has a right to choose between the differing versions as to
    how accident occurred, where record presents obvious disputes
    of fact bearing upon defendant motorist's negligence and
    plaintiff pedestrian's contributory negligence.

2. SAME—NEGLIGENCE—EVIDENCE—SPEED—CONTROL OF CAR.
    Negligence on part of defendant motorist was properly inferable
    in relation both to speed and control of his car which injured
    plaintiff pedestrian as he was crossing 2-way, 3-lane highway
    between 5 and 6 a.m. early in July in the vicinity of a State
    truck weighing station, under evidence including testimony,
    viewed favorably to plaintiff, that defendant skidded for a total
    of 147 feet before point of impact and then 12 feet more.

3. SAME—PEDESTRIAN—CONTRIBUTORY NEGLIGENCE—OBSERVATION.
    Testimony, as favorably viewed for plaintiff pedestrian upon de-
    fendant motorist's claim that plaintiff was guilty of con-
    tributory negligence as a matter of law *held*, to present such
    issue as one of fact for jury, where it is shown plaintiff had

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 5A Am Jur, Automobiles and Highway Traffic §§ 746, 1046, 1047.
[2] 5A Am Jur, Automobiles and Highway Traffic §§ 952–964, 997,
1047.
Admissibility of evidence as to tire tracks or marks on or near high-
way. 23 ALR2d 112.
Duty and liability to persons struck by automobile while crossing
street at unusual place, or diagonally. 14 ALR 1176, 67 ALR
313.
Liability for damage or injury by skidding motor vehicle. 58 ALR
264, 113 ALR 1002.
[3] 5A Am Jur, Automobiles and Highway Traffic §§ 756–759, 1047.
Duty of pedestrian crossing street or highway as regards looking
for automobiles. 79 ALR 1073.
[4] 5A Am Jur, Automobiles and Highway Traffic § 910.
[5] 41 Am Jur, Pleading § 6 *et seq.*
[6] 41 Am Jur, Pleading § 370 *et seq.*
[7] 5A Am Jur, Automobiles and Highway Traffic § 756 *et seq.*
[8] 5A Am Jur, Automobiles and Highway Traffic § 925.
[9] 53 Am Jur, Trial §§ 512, 513, 516.
[10] 53 Am Jur, Trial § 539 *et seq.*

made observation prior to crossing the 2-way, 3-lane highway and it could be inferred his view of approaching danger was obscured by a truck crossing the highway, or by fog, or both.

4. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF—COURT RULES.

The burden of proof to show contributory negligence on the part of plaintiff is imposed upon defendant, where trial was had after effective date of court rule amendment shifting such burden to defendant even though burden of proof had been otherwise at time of accident (Court Rule No 23, § 3a, as effective June 1, 1958).

5. PLEADING—DECLARATION.

A declaration must reasonably inform the defendant of the nature of the cause he is called upon to defend in order to be sufficient (CL 1948, § 614.2; Court Rule No 19, § 1 [1945]).

6. SAME—SUFFICIENCY OF DECLARATION—EVIDENCE—VARIANCE.

Admission in evidence that a particular truck did leave the State weighing station and cross the highway at the time in question may not be said to be unjustified under allegation in pedestrian's declaration against owner and operator of car which injured plaintiff that operator drove at a dangerous rate of speed at a place where he should have known that "trucks by way of direct or cross traffic were entering or leaving the highway from a weighing station," such variance as there may have been not being fatal.

7. AUTOMOBILES—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—OBSERVATION—PLEADING.

Evidence pertaining to issue of contributory negligence of plaintiff pedestrian, particularly regarding his capacity to make observation as to traffic before crossing highway in vicinity of State truck weighing station as affected by presence of a truck and trailer crossing 2-way, 3-lane highway after stopping at station, was properly admitted under plaintiff's responsive answer to affirmative defense of contributory negligence pleaded by defendant (Court Rule No 23, § 3a, as effective June 1, 1958).

8. EVIDENCE—TRAUMATIC AMNESIA—PRESUMPTION OF FREEDOM FROM CONTRIBUTORY NEGLIGENCE.

Fact that plaintiff pedestrian was rendered unconscious when hit by defendants' car, sustained a fracture of the nose and left cheekbone, lacerations and abrasions of the face accompanied by some anesthesia of the left side, and a Colles fracture of the right wrist presented a question of fact for the jury as to

traumatic amnesia entitling plaintiff to presumption of freedom from contributory negligence in the absence of clear, positive, and credible evidence opposing such presumption; it being unnecessary for plaintiff to present medical evidence that the concussion and head injuries could have caused the amnesia.

9. AUTOMOBILES—INSTRUCTIONS.

Charge to jury in pedestrian's action against owner and operator of car which injured him *held,* free from reversible error when considered as a whole, where appellants' counsel expressed no dissatisfaction with it at its conclusion, although in part it failed to give a reasonably organized statement of the law in the judge's own words when he gave such of the requests to charge as he believed to be accurate and told which party requested the charge.

10. TRIAL—INSTRUCTIONS—REQUEST TO CHARGE.

A charge to the jury is sufficient if the judge has reviewed the parties' requests and covered the subjects concerned in his own language or in language he deems appropriate under the factual situation as an attorney is not entitled to demand that a specific charge be given verbatim.

Appeal from Jackson; Falahee (Charles J.), J. Submitted April 6, 1961. (Docket No. 28, Calendar No. 48,838.) Decided September 23, 1961.

Case by Paul S. Knickerbocker and American Automobile Insurance Company against Leroy E. Samson and Nedra Moyer for personal injuries sustained when struck by automobile and for sums paid by insurance carrier on workmen's compensation. Verdict and judgment for plaintiffs. Defendants appeal. Affirmed.

*Doyle & James (Austin J. Doyle,* of counsel), for plaintiffs.

*Kelly, Kelly & Kelly,* for defendants.

EDWARDS, J. This is a negligence action in which defendants, owner and driver of an automobile which

struck a pedestrian, appeal from jury awards totalling $8,000 to the 2 plaintiffs.

The accident happened between 5 and 6 a.m., July 7, 1955, on US-12 in the vicinity of a State truck weighing station in Leoni township, Jackson county. The highway was a 2-way, 3-lane highway which at the relevant time and place was both level and dry.

Plaintiff Knickerbocker was a bakery truck driver heading back from Detroit toward Jackson. After passing over the scales at the weighing station he proceeded west a short distance and parked his truck on the north shoulder of the highway opposite a small restaurant called the Greenwood. Plaintiff then went across the highway to the Greenwood, drank a cup of coffee and, on emerging, was seeking to cross the highway to his truck when the accident occurred.

The other plaintiff is the insurance company which seeks to recover the sum which it paid plaintiff Knickerbocker in workmen's compensation.

Defendant Samson was a guard at Jackson prison who was driving west on US-12 to report for work on the 6 a.m. shift. He was driving a car owned by the other defendant with her permission.

Much of the dispute on appeal concerns evidence presented by plaintiffs which tended to suggest that fog and a trailer truck crossing the highway obscured the scene of the accident.

Two of defendants' claims of error relate to the evidence. They contend that plaintiff Knickerbocker was guilty of contributory negligence as a matter of law because he walked into the side of an automobile plainly there to be seen. The defendants also contend that there is no evidence of defendant Samson's negligence.

Plaintiff Knickerbocker's own testimony would not have helped him much as to these issues. He claimed

that the injuries received in the accident deprived him of memory of events after he started across the highway.

Plaintiffs' answer to appellants' contentions is perhaps best supplied by the testimony of the driver of the trailer truck which was crossing the highway at the time of the accident:

"*Q.* Where did that accident happen in relation to the weigh scales?

"*A.* Well, I would say in the neighborhood of about 150 feet from the scale.

"*Q.* Would that be west or east of the scales?

"*A.* Well, it would be west of the scale; going west.

"*Q.* Going west?

"*A.* Yeah.

"*Q.* All right. Now, in what direction had you been traveling prior to that accident?

"*A.* I was going west also.

"*Q.* What was the condition of the weather that morning?

"*A.* Foggy.

"*Q.* Did you use the scales that morning?

"*A.* Yes, I did. Every day I have to use them.

"*Q.* All right. And when did you first notice Paul Knickerbocker? Was it before or after you were on the scales?

"*A.* Well, when I noticed him, when I was coming out from the—after I had crossed the scale. I was coming, crossing highway, to the restaurant on the left side. * * *

"*Q.* (Interrupting): Where was he when you first saw him?

"*A.* Coming across into the first lane, in the left lane, the south left lane.

"*Q.* All right.

"*A.* And by the time I got my tractor across, my trailer was still blocking the—practically the center of the middle lane; and when I discovered he had— that he had saw something, he was across the middle

lane into the right—left—west lane, and he had—
that's the time I realized he did discover something.

"*Q.* What caused you to realize he had discovered
something?

"*A.* He tried and started to run.

"*Q.* Yes.

"*A.* So I kept watching where was he running
from. When I saw him trying to run, I wondered
what was he running from and heard these brakes
squealing. Then I saw this car sliding sideways
in this lane towards him, and it hit him somewhere
near the front up there. I can't tell you the exact
spot, but somewhere in the middle near the front.

"*Q.* Of what?

"*A.* The car.

"*Q.* Which side?

"*A.* The left side of the car."

Confirmation of this version of the accident was
supplied by a waitress from the Greenwood restau-
rant who testified that she had gone out onto the
steps of the restaurant as plaintiff Knickerbocker
left, and stood there watching plaintiff leave and the
truck arrive. Her testimony confirmed the fog and
the presence of the truck crossing the road to the
restaurant. She also testified that she saw plaintiff
stop and look both ways before starting across the
highway, and that when she saw defendants' car
for the first time, "it was kind of sliding," and
plaintiff "was at the last lane acrossed."

Defendant Samson's version of the accident was
quite different. He claimed that plaintiff Knicker-
bocker was standing in the center lane when he first
saw him, that he (the defendant) continued driving
in the north lane, and that plaintiff suddenly "walked
right in—right into the side of my car." Defendant
asserted that he was traveling 35 miles per hour
because "everyone has to usually slow down there
because there is always so many trucks."

A Michigan State policeman who reported to the scene measured defendant's skid marks on the highway as 147 feet to the point of impact, and 12 feet beyond to where defendant's car "nosed under" plaintiff's truck parked on the north side of the highway.

This record presents obvious disputes of fact bearing on negligence and contributory negligence. The jury had a right to choose between the differing versions of the accident, and it chose to believe the evidence favorable to plaintiffs.

We believe that the jury had a right to infer negligence on the part of defendant Samson in relation both to speed and control under the evidence and circumstances as viewed favorably to plaintiffs.

Further, on that same view of the evidence, plaintiff Knickerbocker cannot be held to have been guilty of contributory negligence as a matter of law. There was evidence of plaintiff Knickerbocker's observation prior to entering the highway, and there was testimony from which the jury could have inferred that his view of approaching danger was obscured by the truck crossing the highway, or by fog, or both. Under this record, the circuit judge was right in holding that negligence and contributory negligence were issues of fact for the jury. *Ware* v. *Nelson,* 351 Mich 390; *Bartlett* v. *Melzo,* 351 Mich 177. *Cf. Churukian* v. *LaGest,* 357 Mich 173; *Schumko* v. *Center,* 363 Mich 504. It should be noted that the burden of proof on the latter issue was on defendants. Court Rule No 23, § 3a (1945).*

The claim of error presented with the greatest vigor by defendants-appellants pertains to the assertion that plaintiffs failed to plead the facts developed at trial pertaining to the truck which was turning into the Greenwood restaurant just as the accident

---

* See amendment effective June 1, 1958, 352 Mich xiv.—REPORTER.

occurred. Defendants-appellants contend that this testimony represented a material change in plaintiffs' theory of the case, that it caught defendants by surprise, and that inability to prepare for this testimony prejudicially affected the outcome.

It is clear that defendants' counsel objected vigorously to the introduction of the evidence pertaining to the truck on the grounds stated. The trial judge overruled the objection, holding that the amended declaration was sufficient to apprise defendants of the nature of plaintiffs' claims and that the pleading of evidence was not required. It should be noted that defendants' counsel did not seek adjournment or continuation to meet any claimed surprise.

Further, while the amended declaration did not specifically refer to a particular truck crossing the highway, it did allege that defendant Samson drove at a dangerous rate of speed at a place where he should have known that "trucks by way of direct or cross traffic were entering or leaving the highway from a weighing station."

Michigan statutes and court rules place "emphasis squarely upon the notice feature of pleading" (*Manley, Bennett & Company* v. *Woodhams,* 349 Mich 586, 592, 593):

" 'In the actions which are in this act retained, the forms of declaration now in common use may be employed; but no declaration shall be deemed insufficient which shall contain such information as shall reasonably inform the defendant of the nature of the case he is called upon to defend.' CL 1948, § 614.2 (Stat Ann § 27.812).

" 'The declaration shall contain such specific allegations as will reasonably inform the defendant of the nature of the cause he is called upon to defend.' Court Rule No 19, § 1 (1945)."

This Court has twice recently approved the following statement pertaining to modern pleading:

"In connection with declarations, as with other pleadings, there has been increasing liberality in upholding the pleading without regard to technical restrictions as to form. The principal requirements of a declaration are that it state a cause of action and that the facts be alleged with sufficient particularity to reasonably inform the defendant of the nature of the cause of action. Accordingly, our Supreme Court has said that the purpose of a declaration is to advise the defendant as to the nature of the plaintiff's claim, and that the chief object of a declaration is to plainly apprise the opposite party of the cause of action and the claim of the plaintiff." 19 MLP, Pleading, § 8, p 12.

*Lahar* v. *Barnes,* 353 Mich 408, 413; *Jean* v. *Hall,* 364 Mich 434.

It would be difficult to hold under modern pleading doctrine that the paragraph quoted from plaintiffs' amended declaration did not justify admission of evidence that a particular truck did indeed leave the weighing station and cross the highway at the time in question. Such variance as there was between pleading and proofs, we do not view as fatal. *Baker* v. *Gushwa,* 354 Mich 241.

Further, the evidence objected to bears largely on the issue of contributory negligence which defendants had the responsibility of pleading as an affirmative defense. In this regard, a review of the pleadings indicates that plaintiffs answered responsively the allegations of defendants.*

---

\*          "Affirmative Defense

"And for a further defense, defendants charge that plaintiff Knickerbocker carelessly, recklessly, and negligently failed to look for and to see the car of defendants, and walked into the side of said car and was thereby guilty of negligence which was the sole, proximate ·cause of his injuries, or, in the alternative, if defendants were guilty of any negligence, the negligence of plaintiff Knickerbocker, as aforesaid, contributed to and was a proximate cause of his injuries."

Plaintiffs' answer to affirmative defense:

"That Paul Knickerbocker did not walk into the side of defendant's car and that he was using due care after making an observation for automobiles on the highway and Paul Knickerbocker was at all times

Appellants also claim error in that portion of the trial judge's charge to the jury which instructed them that, if they found plaintiff Knickerbocker to be suffering from traumatic amnesia, he was entitled to a presumption of freedom from negligence until that presumption was overborne by factual evidence —in which event, the presumption disappeared. The burden of appellants' complaint is that there was no medical evidence of traumatic amnesia.

It is certain that this record contains medical evidence of trauma and evidence of amnesia. Plaintiff Knickerbocker was rendered unconscious by the accident, "First I came to was when they was taking stitches in my lip." He testified that he did not remember the accident, "I don't know what happened to me until they told me." The attending physician identified plaintiff Knickerbocker's injuries as fracture of the nose, fracture of the left cheekbone, lacerations and abrasions of the face accompanied by some anesthesia of the left side, and a Colles fracture of the right wrist. Repeated X-rays for possible skull fracture were negative.

There is no dispute in this record as to any of this evidence. We do not deal here with a loss of memory unrelated to injuries. *Cf. Thompson* v. *Southern Michigan Transportation Co.,* 261 Mich 440. Nor do we feel that on this record it was essential for plaintiffs to have presented medical evidence that the concussion and head injuries could have caused the amnesia. *Shaw* v. *Bashore,* 353 Mich 31. The unconsciousness, the severe head injuries, plus plaintiffs' testimony as to loss of memory, served to present the fact question for the jury as to traumatic amnesia on which the circuit judge instructed.

---

free from any negligence whatsoever contributing to the injuries he received."

Nor do we find clear, positive and credible evidence opposing the presumption of due care such as would deprive plaintiffs of that presumption. See *Garrigan* v. *LaSalle Coca-Cola Bottling Company,* 362 Mich 262, 264.

We have reviewed appellants' other questions which bear principally upon the judge's charge to the jury. Taking the charge as a whole, we find no reversible error.

We note that at the conclusion of the charge appellants' counsel expressed no dissatisfaction. While this failure has no bearing on the correctness or lack thereof of the charge, it does have some influence on our determination as to whether or not any error was of such a nature as to prejudice the result.

The trial judge in this case first gave a brief, careful, and informative charge of his own in which we perceive no error. He then turned to the written requests to charge submitted by the parties and proceeded to give such of them as he believed to be accurate, telling the jury which party requested each and reading it verbatim.

The result is a series of disjointed and unconnected legal propositions all more or less self-serving —some of them slanted to a degree which if they stood alone would make them erroneous. We have criticized this practice before (*Schattilly* v. *Yonker,* 347 Mich 660, and *Leebove* v. *Rovin,* 363 Mich 569), and we repeat that criticism. The judge's charge should be a reasonably organized statement of the law in the judge's own words. No lawyer is entitled to demand that a specific charge be given verbatim, even if it be a quotation of Supreme Court language in a somewhat comparable situation. It is sufficient if the judge has reviewed the parties' requests and covered the subjects concerned in his own language or in language he deems appropriate under the factual situation facing him.

To some degree, of course, the source labeling decreases the impact of the charge on the jury. And to some degree the self-serving words in one party's requests served to counter those of the other.

On balance we do not believe that the charge taken as a whole was unfair to defendants or prejudiced the outcome of the case.

Affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, TALBOT SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.