*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CALEB MITCHELL BROWN and DIANA
BROWN,

        Plaintiffs-Appellees,

and

ZURICH AMERICAN INSURANCE COMPANY,

        Intervening Plaintiff-Appellee,

v

COMSTOCK TURF, INC., JOEL ROBERT
COMSTOCK, and COLLEEN SUE COMSTOCK,

        Defendants-Appellants.

UNPUBLISHED
February 26, 2026
2:53 PM

No. 370824
Clinton Circuit Court
LC No. 14-011366-NI

Before: GADOLA, C.J., and BOONSTRA and PATEL, JJ.

PER CURIAM.

Following a jury trial, the trial court entered a judgment in favor of plaintiffs, holding defendants liable for injuries to plaintiff Caleb Mitchell Brown and awarding damages of $9,512,590.35.[1] Defendants appeal by right. We vacate the judgment and remand for entry of an order granting judgment in favor of defendants.

---

[1] Plaintiff Diana Brown is Brown's wife. Plaintiffs' complaint included a count alleging loss of consortium. Intervening plaintiff Zurich American Insurance Company also filed, by stipulated order, an intervening complaint seeking to recoup, from any recovery received by Brown, amounts it paid to Brown as the worker's compensation insurance carrier for Brown's employer at the time of the underlying incident.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On December 3, 2013, defendant Joel Robert Comstock was driving a Ford F-350 pickup truck pulling a 40-foot trailer on Price Road near Westphalia.[2] Brown was employed by a waste collection company at the time, and was working with a partner, Douglas Reed, to pick up residential garbage. Reed was driving their garbage truck, and he stopped on Price Road to allow Brown to collect garbage and bring it to the truck. Reed testified that he stopped the garbage truck in the roadway (not on the shoulder of the road) and that they were "running behind" because the garbage truck had broken down earlier in the day.

Comstock testified that he had been following the garbage truck for approximately one and a half miles. There was another vehicle between his truck and the garbage truck as it made periodic stops.[3] Comstock testified that he observed the vehicle ahead of him pull out to pass the garbage truck and then saw it slam on its brakes as Brown ran across Price Road (from the passenger side of the garbage truck). The other vehicle then passed the garbage truck, after which Comstock "proceeded with caution" to also cross the yellow line to do the same. At that point, Comstock testified, he saw Brown grab a garbage container, immediately turn, and "just about step[] in front of" the F-350. Comstock testified that Brown was standing on the shoulder of the road, at Comstock's side window, and that they "made eye contact" as the F-350 was passing the garbage truck. According to Comstock, Brown "was in a safe position or I wouldn't have proceeded." Comstock then continued to his job site, with Brown "standing there holding a can to his left standing on the side of the road and on the shoulder." Comstock did not see or feel anything to indicate that his truck or trailer made impact with anything. Comstock proceeded to his job site and, when police contacted him there about an hour later, he learned that Brown had been injured.

Brown testified that he remembered two vehicles following the garbage truck for miles as it made stops, including "a big truck and trailer" carrying equipment. He said that the garbage truck stopped at a driveway by Clintonia Road, and that the first vehicle then passed the garbage truck before he crossed the road. Brown further testified:

> I crossed the road to get the can, looked beyond the road and then the white truck with the equipment on it passed and then I just kind of turned my head because of spray from the water and then, you know, I don't remember anything after that.

Brown elaborated that he "just remember[s] a white flash [and] [does not] know if it was white from the truck or just [his] brain getting lit up." He said that he had been standing "[i]n the driveway" next to the garbage can. He denied standing in the roadway or leaning into the roadway. Brown had no memory of anything striking him or otherwise injuring him and said that he next recalled waking up while being strapped into a gurney by emergency services. Reed testified that

---

[2] Comstock testified that he was the sole owner of a landscaping business, defendant Comstock Turf, LLC, and that his wife, defendant Colleen Comstock, was a co-owner of the F-350.

[3] Comstock testified that the other vehicle was a red Ford Expedition. Brown described it as a maroon Chevy Tahoe. Reed testified that it was a gold SUV.

he did not see or otherwise perceive a collision, but that after Comstock's truck passed he saw Brown lying unconscious on the ground.

On November 20, 2014, plaintiffs filed a complaint alleging that Comstock was negligent and that Brown was injured as a result. Before trial, defendants moved for summary disposition, arguing among other things that plaintiff had failed to establish a genuine issue of material fact regarding causation. The trial court denied the motion.[4]

The matter was tried to a jury in 2022. At trial, Comstock, Brown, and Reed testified as described. Timothy Robbins, Brown's traffic crash reconstruction expert, testified that he had not discovered any physical evidence that Comstock's truck or trailer had left the roadway or that it had struck Brown. Robbins could not form a conclusion based on his investigation regarding whether any part of Comstock's truck or trailer had struck Brown, whether Brown had struck Comstock's truck or trailer, or whether Brown was standing in the roadway when he was injured.

The testimony of several medical providers was provided by way of video depositions. X-ray and CT scans taken at the emergency room the day of Brown's injury were normal, but Brown was noted to be dizzy and possibly concussed. In late 2014 and 2015, other medical providers diagnosed Brown with various post-concussion symptoms and injuries to his shoulder requiring surgery, which, based on Brown's self-report, they attributed to the December 2013 injury.

After the close of plaintiffs' proofs, defendants moved for a directed verdict, arguing among other things that plaintiffs had not established causation. The trial court denied the motion.

Before the jury began its deliberations, the trial court instructed the jury that it could infer that Comstock was negligent if it found that he had violated either MCL 257.640 or MCL 257.653. MCL 257.640 states in relevant part:

> (1) The state highway commission and county road commissions shall determine those portions of a highway under their jurisdiction where overtaking and passing or driving to the left of the roadway would be especially hazardous, and by appropriate signs or markings on the roadway shall indicate the beginning and end of those zones in a manner enabling an ordinary observant driver of a vehicle to observe the directions and obey them. A sign shall be placed to the left of the highway on those portions of a highway where additional notice is considered necessary.
>
> * * *
>
> (3) A person who fails to obey the traffic-control devices installed pursuant to this section is responsible for a civil infraction.

---

[4] This Court denied defendants' application for leave to appeal, for failure to persuade the Court of the need for immediate appellate review. *Brown v Comstock Turf, Inc*, unpublished order of the Court of Appeals, entered April 20, 2017 (Docket No. 335528).

MCL 257.653b states in relevant part:

> (1) Upon approaching and passing a stationary solid waste collection vehicle, a utility service vehicle, or a road maintenance vehicle that is giving a visual signal by means of flashing, rotating, or oscillating amber lights as permitted by section 698, the driver of an approaching vehicle shall reduce to and maintain a safe speed for weather, road conditions, and vehicular or pedestrian traffic and proceed with due care and caution. . . .

The jury reached a verdict and awarded plaintiffs damages as stated above.[5] After the verdict, defendants moved for a new trial or for a judgment notwithstanding the verdict (JNOV), or alternatively for remittitur, which the trial court denied. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Jarrad v Integon Nat'l Ins Co*, 472 Mich 207, 212; 696 NW2d 621 (2005). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. at 139-140 (quotation marks and citation omitted).

This Court also reviews de novo a trial court's denial of a motion for a directed verdict. "And the principles guiding analysis of motions for summary disposition [under MCR 2.116(C)(10)] parallel those applicable to analyzing motions for a directed verdict." *Barnes v 21st Century Premiere Ins Co*, 334 Mich App 531, 550-551; 965 NW2d 121 (2020). Additionally, this Court reviews de novo a ruling on a motion for a judgment notwithstanding the verdict. *Zaremba Equip, Inc v Harco Nat Ins Co*, 302 Mich App 7, 16; 837 NW2d 686 (2013). The motion should be granted if the evidence, viewed in the light most favorable to the nonmoving party, fails to establish a claim as a matter of law. *Id*.

This Court reviews de novo a trial court's decision regarding a motion for a new trial. *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001).

---

[5] The jury's verdict totaled more than $14,000,000 but was converted to a judgment of $9,512,590.35 after setoffs. The jury awarded $409,553 for past economic damages (through 2022), additional economic damages (ranging from $77,284 to $128,683) for each year from 2023 through 2046, $2,500,000 in past noneconomic damages, additional noneconomic damages of $100,000 for each year from 2022 through 2059, $1,000,000 of past lost consortium damages, and additional lost consortium damages of $100,000 for each year from 2022 through 2059.

## III. ANALYSIS

Defendants argue that plaintiffs failed to establish causation, and that the trial court erred by denying their pretrial motion for summary disposition, their motion for a directed verdict, their motion for a JNOV, and their motion for a new trial. We agree.

To establish a claim for negligence, a plaintiff must prove: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the plaintiff suffered damages, and (4) the defendant's breach caused the plaintiff's damages. See *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). To establish causation, the plaintiff must prove that the defendant's breach of the standard of care was both the cause in fact and a proximate cause of the plaintiff's damages. See *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994). Cause in fact requires that the harmful result would not have come about but for the negligent conduct. *Haliw v Sterling Hts*, 464 Mich 297, 310; 627 NW2d 581 (2001). Cause in fact may be established by circumstantial evidence, but such proof must be subject to reasonable inferences and not mere speculation. *Skinner*, 445 Mich at 163-164. There must be more than an equal probability or a mere possibility that the defendant's conduct was the factual cause of the plaintiff's damages. *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (2011).

Our Supreme Court has cautioned that "it is important to bear in mind that a plaintiff cannot satisfy this burden [of proving causation] by showing only that the defendant may have caused his injuries." *Craig v Oakwood Hospital*, 471 Mich 67, 87; 684 NW2d 296 (2004) (cleaned up). "Our case law requires more than a mere possibility or a plausible explanation. Rather, a plaintiff establishes that the defendant's conduct was a cause in fact of his injuries only if he set[s] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect." *Id* (footnote omitted). "While the evidence need not negate all other possible causes, this Court has consistently required that the evidence exclude other reasonable hypotheses with a fair amount of certainty." *Id*. at 87-88 (cleaned up).

In this case, there were no witnesses who saw how Brown was injured, and Brown himself does not remember what happened. There was no physical evidence establishing that any portion of Comstock's truck or trailer (or the equipment on the trailer) made contact with any part of Brown's body; nor did any experts conclude that Brown's injuries were caused by contact with a moving vehicle or trailer (or, assuming contact, how the contact occurred). Reed testified that he and Brown were "running behind," and Comstock testified that Brown ran in front of the vehicle that was between the garbage truck and Comstock's F-350, causing the other vehicle to have to slam on its brakes. Brown then nearly stepped in front of the F-350, and his eyes met Comstock's as the F-350 passed the garbage truck while Brown stood on the side of the road or on its shoulder. Brown and Comstock both testified that Brown was in a safe location as he watched Comstock's truck begin to pass him.

Plaintiffs argue that the jury was permitted to presume, from Comstock's alleged violation of a traffic statute, that he had acted negligently, and to infer that Brown was not negligent because of his inability to recall what happened. Indeed, the violation of a safety statute gives rise to a rebuttable presumption that the violator was negligent. See *Zeni v Anderson*, 397 Mich 117, 122; 243 NW2d 270 (1976); *Johnson v Bobbie's Party Store*, 189 Mich App 652, 661; 473 NW2d 796

(1991). And our Supreme Court has stated, albeit in the days of contributory negligence, that a pedestrian struck by an automobile who develops amnesia as a result may be presumed to have been acting non-negligently. *Knickerbocker v Samson*, 364 Mich 439, 448-449; 111 NW2d 113 (1961). However, these presumptions, even if they apply in this case, go to the issues of duty, breach, and comparative fault, not causation-in-fact.[6]

Plaintiffs argue that because Reed saw Brown lying on the ground immediately after Comstock's truck passed, the jury could reasonably conclude Comstock's alleged negligence must have caused Brown's injury. Although that explanation is not inconsistent with the facts presented at trial, plaintiffs did not produce evidence to "exclude other reasonable hypotheses with a fair amount of certainty," and plaintiff's theory is not deducible as a "reasonable inference." *Craig*, 471 Mich at 87-88. Our Supreme Court has described the "basic legal distinction between a reasonable inference and impermissible conjecture":

> [A] conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. *There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only.* On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence. [*Skinner,* 445 Mich at 164-165 (emphasis added).]

See also *Karbel v Comerica Bank*, 247 Mich App 90, 98; 635 NW2d 69 (2001). In other words, plaintiffs merely speculate—and invited the jury to speculate—about how Brown was injured. There were multiple "plausible explanations" for Brown's injury, and although plaintiffs' theory was one of them, the evidence was "without selective application" as to any of them, and therefore

---

[6] We note that MCL 257.640, by its language, appears to be designed to protect *drivers* from overtaking or being overtaken in hazardous areas—for example, the statute requires that signs or markings be placed so as to enable "ordinary observant *driver*[*s*]" to observe and obey them. MCL 257.640(1) (emphasis added). The presumption of negligence from a statutory violation may be applied only if the statute is intended to protect against the result of the violation, the plaintiff is within the class intended to be protected by the statute, and the evidence will support a finding that violation of the statute was a proximate cause of the injury. See *Klanseck v Anderson Sales & Serv, Inc*, 426 Mich 78, 87; 393 NW2d 356 (1986). See also *Johnson*, 189 Mich App at 661 (holding that a negligence finding requires a showing that the "purpose" of the prohibition was "to prevent the type of injury and harm suffered"). Moreover, plaintiffs cite to no cases applying a presumption of non-negligence due to lack of memory after Michigan's adoption, see *Placek v Sterling Heights*, 405 Mich 638; 275 NW2d 511 (1979), of a comparative negligence system. But we need not determine whether either of these presumptions in fact applied in this case, or whether they were adequately rebutted, because they relate to the duty of care and Comstock's or Brown's breach of that duty, not causation. See *Zeni*, 397 Mich at 138-139 (holding that causation still must be established).

they "remain conjectures only." *Id*. Brown could also have, for example, merely slipped and fell in the inclement weather. Or, particularly given that he and Reed were "running behind" and Brown was observed running in front of (or nearly in front of) a passing vehicle before the incident in question, he may have hurriedly walked into harm's way before the entirety of Comstock's trailer had passed. There simply was no evidence pointing to any particular theory of causation, or any evidentiary basis from which from which a jury could determine, beyond conjecture, what had happened. The mere possibility that Brown could have been injured as a result of Comstock's alleged negligence was insufficient as a matter of law to establish causation. *MEEMIC Ins*, 292 Mich App at 282.

Even presuming that Comstock was negligent in crossing over the yellow line, Brown's acknowledged awareness of Comstock's truck and trailer and of their passing of the garbage truck—as confirmed by Brown's and Comstock's contemporaneous meeting of eyes—demonstrates that Comstock's crossing of the yellow line itself played no causative role in the event. The jury was not permitted to infer causation merely because it presumed Comstock negligent and Brown not negligent; moreover, the issue should not have reached the jury without plaintiffs presenting more than mere speculation in support of causation. *Skinner*, 445 Mich at 163-164.

For these reasons, we vacate the judgment and remand for entry of an order granting judgment in favor of defendants. Because we decide this case on causation grounds, we need not address defendants' other arguments.

Vacated and remanded for entry of judgment in favor of defendants. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra

-7-