*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CALEB MITCHELL BROWN and DIANA
BROWN,

        Plaintiffs-Appellees,

and

ZURICH AMERICAN INSURANCE COMPANY,

        Intervening Plaintiff-Appellee,

v

COMSTOCK TURF, INC, JOEL ROBERT
COMSTOCK, and COLLEEN SUE COMSTOCK,

        Defendants-Appellants.

UNPUBLISHED
February 26, 2026
2:53 PM

No. 370824
Clinton Circuit Court
LC No. 14-011366-NI

Before: GADOLA, C.J., and BOONSTRA and PATEL, JJ.

PATEL, J. (*dissenting*).

The evidence at trial supported a finding of causation, and therefore I respectfully dissent.

"A directed verdict is appropriate only when no material factual question exists upon which reasonable minds could differ." *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 202; 755 NW2d 686 (2008) (cleaned up). It is the fact-finder's responsibility to determine the weight and credibility of the trial testimony, and the court may not substitute its judgment for that of the jury when the evidence could lead reasonable jurors to disagree. *Id*. A motion for judgment notwithstanding the verdict (JNOV) should only be granted if viewing the evidence and all legitimate inferences in a light most favorable to the nonmoving party fails to establish a claim as a matter of law. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016). "[I]f reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." *Id*. at 605-606 (cleaned up).

When Comstock encountered the garbage truck, he was returning to his job site after taking a break for lunch. The roads were wet.[1] Comstock was driving a F-350 and towing a 40-foot trailer that was loaded with two vehicles and two implements. A sport utility vehicle (SUV) was directly in front of Comstock's truck.[2] The garbage truck was in front of the SUV. Comstock followed the SUV and garbage truck for approximately 1½ miles. The garbage truck made several stops. At each stop, Comstock observed Brown retrieve garbage, throw it into the truck, and then get back onto the truck.[3] At about the fourth or fifth stop, the SUV crossed over the solid yellow center line into the oncoming lane of traffic and began to pass the garbage truck. Comstock claimed that SUV "slammed" on its brakes and stopped, Brown ran to the other side of the road, and then the SUV passed the garbage truck. Brown testified that he crossed the road after the SUV passed the garbage truck. And Reed testified that Brown was standing near the rear of the garbage truck when the SUV passed, and Brown did not cross the road until after the SUV had passed the garbage truck.

Comstock stated, "I saw that as an opportunity for me to get back to my job site . . . ." While Brown was on the other side of the road retrieving garbage, Comstock crossed the solid yellow center line into the oncoming lane of traffic. He explained:

> That's the point where [Brown] grabbed the bag and turned around and just about stepped in front of my truck, which I tried to avoid and stop, slow down, couldn't do much at that point 'cause it was right at my·side.· I saw that.· We made eye contact.· It was kind of weird and I continued on to my job site at that point. And at that point that's the last recollection I have of any situation.

Comstock maintained that Brown was in a "safe position" on the shoulder—not in the roadway—as he passed the garbage truck. And when Comstock last saw Brown, Brown was not making any movements to walk into the lane of travel. Brown testified that he was standing in a driveway when Comstock drove past him. Brown stated that he held his position because he "didn't want to get hit by a truck." He denied walking into the truck. Reed confirmed that Brown was not standing in the road when Comstock's truck began to pass the garbage truck.

As Comstock drove past Brown, water sprayed up.[4] Brown turned his head to avoid the spray,[5] and the next thing he recalled was "a white flash." As Reed was inputting data in his

---

[1] Comstock testified that it was "snowy." Brown testified that it was "rainy sleet." Reed testified that it had "started raining about half way through the day."

[2] Comstock testified that the vehicle was an Expedition. Brown testified that it was a Tahoe. Reed simply described it as an SUV.

[3] Brown testified that, between stops, he stood on a step on the side of the truck and hung onto a handrail.

[4] Comstock maintained he was driving approximately five miles per hour when he passed the garbage truck. But Reed estimated that the truck was traveling about 20 miles per hour.

[5] Brown was wearing a knit hat, the hood from his sweatshirt, and the hood from his rain jacket over his head.

computer, he heard the trailer "rattle" like it had struck a pothole or something.[6] Reed looked up as the truck drove past and noted that the truck had "Comstock" on the door. After the truck cleared, Reed saw Brown lying on the ground. No other vehicles drove past the garbage truck between the time that Comstock's truck passed and Reed observed Brown lying in the street.

Reed testified that Brown was unconscious for approximately two to three minutes. Reed told the responding officer, Deputy Zachary Smith, that Brown was struck by a truck towing a trailer and provided a description. After the truck was located, Deputy Smith spoke with Comstock and took pictures of the truck and trailer.[7] Deputy Smith did not observe any skin or blood on the truck or trailer. However, Smith testified that he would not expect to find either if Brown was wearing multiple layers on his head. Deputy Smith returned to the accident scene approximately two hours after the accident. He did not observe any tire marks that he attributed to Comstock's truck or trailer.

Plaintiff's accident reconstruction expert, Tim Robbins, did not inspect Comstock's vehicle or trailer because both had been disposed but he examined the accident scene. Robbins opined that any tire impressions that may have been left on the shoulder by Comstock's truck or trailer would have been gone within 12 to 15 minutes if it was wet or, if it was cold enough, the ground would have been frozen and there would have not been any tire impressions.

Brown testified that he sustained injuries to his head, spine, and shoulder as a result of the accident. He showed the jury a scar on the right rear upper portion of his head, which he testified was a result of the accident. Photographs of Brown's physical injuries were also admitted into evidence.

"The causation element of a negligence claim encompasses both factual cause (cause in fact) and proximate, or legal, cause." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 245; 964 NW2d 50 (2020). "Factual cause generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred. Proximate cause, by contrast, normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id*. at 245-246 (cleaned up). "A plaintiff must necessarily establish factual cause in order to establish proximate cause. While factual causation may be established with circumstantial evidence, the evidence must support reasonable inferences of causation, not mere speculation." *Id*. at 246 (cleaned up). Consequently, "to provide circumstantial evidence that permits a reasonable inference of causation, a plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id*. (cleaned up). To prove causation, "a plaintiff need not prove that an act or omission was the *sole* catalyst for his injuries," rather, the plaintiff "must introduce evidence permitting the jury to conclude that the act or omission was a cause." *Craig ex rel Craig*

---

[6] Testimony and evidence at trial confirmed that there was not a pothole in the roadway near the area where the accident occurred. Comstock denied that his truck or trailer made any noise as he drove past the garbage truck.

[7] Comstock told Deputy Smith that he had unloaded the trailer after he returned to his job site.

*v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004). "All that is necessary is that the proof amount to a reasonable likelihood of probability rather than a possibility." *Skinner v Square D Co*, 445 Mich 153, 166; 516 NW2d 475 (1994) (cleaned up).

The majority concludes that there "was no evidence pointing to any particular theory of causation, or any evidentiary basis from which from which a jury could determine, beyond conjecture, what had happened" and thus the evidence was "insufficient as a matter of law to establish causation." I respectfully disagree. Although Brown did not know which part of Comstock's vehicle or trailer struck him,[8] there was sufficient evidence for the jury to make a reasonable inference that Brown was struck by either Comstock's truck or the 40-foot trailer as Comstock drove past Brown in the oncoming lane of traffic while passing the garbage truck.

I also respectfully disagree with the majority's conclusion that "Comstock's crossing of the yellow line itself played no causative role in the event." Regardless of whether Comstock violated MCL 257.640 by passing the garbage truck in a no-passing zone, defendants concede that the jury was properly instructed that it could infer Comstock was negligent if it found that he violated MCL 257.653b, which, at the time of the accident, stated:

> (1) Upon approaching and passing a stationary solid waste collection vehicle, a utility service vehicle, or a road maintenance vehicle that is giving a visual signal by means of flashing, rotating, or oscillating amber lights as permitted by section 698, the driver of an approaching vehicle shall reduce to and maintain a safe speed for weather, road conditions, and vehicular or pedestrian traffic and proceed with due care and caution. . . .

If Comstock had remained behind the stopped garbage truck and had not crossed the solid yellow center line into the oncoming lane of traffic, Comstock's truck and trailer would not have passed by Brown as he stood in the driveway. In other words, but for Comstock passing the garbage truck in the oncoming lane of traffic, there would not have been contact.

Accordingly, I respectfully dissent from the majority's opinion. I would affirm the trial court's orders denying defendants' motion for summary disposition, denying defendants' motion for a directed verdict, and denying defendants' motion for a new trial or JNOV.

/s/ Sima G. Patel

---

[8] Brown suffered amnesia from his injuries and was therefore entitled to an inference of having exercised due care. See *Knickerbocker v Samson*, 364 Mich 439, 448-449; 111 NW2d 113 (1961).