## MOORE v LEDERLE LABORATORIES

1. DEPOSITIONS—OBJECTION—APPEAL AND ERROR.

Trial court erred in ruling that plaintiff's objection to testimony in a deposition was not timely made where plaintiffs' counsel failed to object when the deposition was being taken (GCR 1963, 308.3[1]).

2. WITNESSES—EXPERT WITNESS—QUALIFICATIONS—EVIDENCE.

A witness who is to give an opinion an untrained layman could not must first qualify himself.

3. WITNESSES—EXPERT WITNESS—QUALIFICATIONS—EVIDENCE—DRUGS AND NARCOTICS—DISEASE.

A witness, in order to give an opinion as to whether a person could have died within 24 hours of a particular disease if that person did not receive a particular drug, must first be qualified as having sufficient knowledge of the effects of the disease if untreated and of the effects of the drug in arresting the disease.

4. WITNESSES—EXPERT WITNESS—QUALIFICATIONS—INFERENCES—EVIDENCE.

The qualifications of an ordinary or nonexpert witness to give testimony as to the inferences he has drawn from the facts he has perceived are tested by the capacity of people generally to draw reliable conclusions from given facts, if the conclusion to be drawn is beyond such capacity and dependent on specialized knowledge, education, experience or training, the witness, if he has such special qualifications, testifies as an expert witness and not as an ordinary witness.

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur 2d, Depositions and Discovery §§ 130, 132, 134, 138, 139.

[2, 5–7] 31 Am Jur 2d, Expert and Opinion Evidence §§ 26–32.

[3] 31 Am Jur 2d, Expert and Opinion Evidence § 185.

Admissibility of opinion evidence as to cause of death, disease, or injury. 136 ALR 985, s. 66 ALR2d 1082.

[4] 31 Am Jur 2d, Expert and Opinion Evidence § 6.

5. EVIDENCE—ADMISSIBILITY—WITNESSES—EXPERT WITNESS—QUALIFI-
   CATIONS—DRUGS AND NARCOTICS—TETRACYCLINE—DENTIST.

   A foundation was not laid to show that a dentist with a master's
   degree in public health possessed enough expertise in either the
   area of drugs or respiratory illnesses to give an opinion on
   what would have happened to his daughter if she had not
   received tetracycline, a drug used to help prevent infections
   especially those associated with respiratory illnesses but which
   may have a tooth staining side effect, therefore his testimony
   was not competent; the dentist was qualified solely as having
   expertise in the area of the tooth staining side effects of the
   drug.

6. APPEAL AND ERROR—HARMLESS ERROR—DRUGS AND NARCOTICS—
   TETRACYCLINE—DENTIST.

   Although a trial court was in error in admitting the disputed
   testimony of a dentist concerning the lifesaving qualities of the
   drug tetracycline the error was not so prejudicial as to consti-
   tute reversible error; the dentist's disputed testimony was
   merely cumulative and the error, therefore, was harmless.

7. WITNESSES—EXPERT WITNESS—DENTIST—QUALIFICATIONS—EVI-
   DENCE—CUMULATIVE EVIDENCE—DRUGS AND NARCOTICS—AP-
   PEAL AND ERROR.

   The Michigan Supreme Court cannot say the result of a trial of
   an action for damages arising from the use of drugs manufac-
   tured by the defendant would have been different, if a dentist
   who that Court has found not qualified to testify in either the
   area of drugs or respiratory illnesses had not testified as to the
   lifesaving qualities of the drug, in light of the fact that other
   witnesses in addition to the dentist testified to the lifesaving
   qualities of the drug balanced against its tooth staining side
   effects.

Appeal from Court of Appeals, Division 2, Bron-
son, P. J., and Danhof and Van Valkenburg, JJ.,
affirming Washtenaw, William F. Ager, Jr., J.
Submitted March 13, 1974. (No. 9 March Term
1974, Docket No. 54,765.) Decided August 2, 1974.

42 Mich App 689 affirmed.

Complaint by Thomas Moore, for himself and as
next friend of Daniel Moore, against Lederle Labo-

ratories, a division of American Cyanamid Company, for damages resulting from the use of drugs manufactured by defendant. Verdict and judgment for defendant. Plaintiffs appealed to the Court of Appeals. Affirmed. Plaintiffs appeal. Affirmed.

*Collins & McCormick,* for plaintiffs.

*DeVine & DeVine,* for defendant.

T. G. KAVANAGH, J. Plaintiff, Daniel Moore, was born on October 1, 1959, with cystic fibrosis.

From shortly after birth until late 1964 he was treated with tetracycline manufactured by the defendant, Lederle Laboratories. The drug was administered in order to help prevent infections especially those associated with respiratory illnesses.

Due to a side effect of the drug, Daniel Moore's teeth became permanently stained blue-black. Plaintiffs filed suit against defendant on July 7, 1967 alleging that its product damaged Daniel's teeth and that defendant failed to discover the negative side effects and warn the medical profession.

Defendant's theory was that it was not liable for failure to warn of the drug's side effects, because with full knowledge of its side effects on the part of all concerned the drug was administered to save Daniel's life.

The trial was conducted in July, 1970. From a verdict of no cause for action, plaintiffs appealed to the Court of Appeals which affirmed.

The single issue raised by plaintiffs on appeal to this Court is whether certain testimony elicited on cross-examination from one of their expert witnesses was properly admitted.

Dr. Mehaffey, a dentist with a master's degree in

public health, testified by way of deposition taken on July 8, 1970. He testified for plaintiffs as an expert on the tooth staining effects of tetracycline. Dr. Mehaffey agreed with defense counsel that he was not an expert on drugs.

"*Q.* Doctor Mehaffey, I assume you are not an expert in drugs, is that correct?
"*A.* That is right."

On direct examination Mehaffey testified that from his own experience tetracycline did not change the color of his teeth.

On cross-examination Mehaffey testified to the use of tetracycline by his own children and its causing a low degree of staining.

"*Q.* Have you yourself, as a family man, have you used the tetracycline drugs or administered them to your children?
"*A.* Well, my children have been prescribed tetracycline drugs. My son, who has otitis media, or did have otitis media, which is a mild ear infection, quite frequently as an infant was given tetracycline drugs. Penicillin did not seem to touch this infection. My daughter, who had bronchial pneumonia while in Japan, was given large doses for a considerable period of time of this drug. My children in their primary teeth did exhibit some of the staining. Fortunately, it was of a very low degree, not an objectionable level. And their permanent teeth now are in the area of non-objectionable level."

He then agreed with defense counsel that it was worth the tooth staining to save his child's life. It is the admission of this testimony that is in dispute:

"*Q.* So far as your daughter was concerned, you say

the disease for which she was given a tetracycline drug
was what?

"*A*. Bronchial pneumonia.

"*Q*. How sick was she with that?

"*A*. She could have died within 24 hours had she not
been placed on it immediately.

"*Q*. Therefore, you realized—

"*A*. I realized—

"*Q*. —the tetracycline drug in that situation saved
her life?

"*A*. Right.

"*Q*. And I am sure you have no hesitation in saying
that it was worth the tooth staining to save her life, is
that right?

"*A*. Yes, I would say so.

"*Q*. That would be consistent with your opinion in
regard to these other cases which you studied if there
were a lifesaving situation, isn't that true?

"*A*. Many of the cases that I have observed are cases
where it was a lifesaving situation, particularly in
children who had congenital heart defects in which
they were placed on this to reduce their potential for
blood infection, which might cause their life to be lost.

"*Mr. Devine [attorney for defendant]:* I don't think I
have anything else."

Prior to the taking of Mehaffey's deposition it
was stipulated by the attorneys for both parties
that any objections would be resolved by the trial
court at the time the deposition was filed.

At the trial court's hearing on objections rele-
vant to Mehaffey's testimony, some testimony al-
though not that which is in dispute was struck as
being incompetent and hearsay because Mehaffey
was not a medical doctor.

Plaintiffs also objected to the disputed testimony
quoted above on the grounds that it was hearsay
and incompetent because Mehaffey was not a med-
ical doctor and not a qualified medical expert who
could give an opinion on what would have hap-

pened to his daughter if she had not received tetracycline.

The trial court overruled plaintiffs' objection on the grounds that: a) the testimony was relevant to Mehaffey's testimony on direct as to his own personal experience with tetracycline; b) plaintiffs' counsel failed to object when the deposition was being taken; and c) Mehaffey was competent to testify as to his daughter's condition because he was her father.

The Court of Appeals correctly held that the trial court erred in ruling that plaintiffs' objection was not timely made. GCR 1963, 308.3(1). The defendant does not appeal from that holding.

The Court of Appeals further held that because of his medical training and background Mehaffey was competent to offer a general conclusion as to the seriousness of his daughter's illness. *Moore v Lederle Laboratories,* 42 Mich App 689, 696; 202 NW2d 481, 485 (1972).

The Court of Appeals held that the admission of disputed testimony was error nevertheless because it was irrelevant to plaintiffs' theory of the case. Because the parties do not contest that holding we shall not speak to it, except to say that it could be argued that Michigan now follows the traditional rule on the scope of cross-examination which permits a party to cross-examine a witness on any matter so long as it is material and relevant to any issue in the case including the theory of the defense. Comments, *Cross-examination: Permissible Scope in Michigan,* 36 U Det L J 162 (1958).

The Court of Appeals went on to hold that the error in admitting the disputed testimony was harmless because the effect of that testimony was dispelled by plaintiffs' testimony and scientific evidence.

The plaintiffs argue that the trial court and the Court of Appeals erred in holding that Mehaffey's testimony was competent. We agree.

If a witness is to give an opinion an untrained layman could not, the witness must first qualify himself. *People v Loomis,* 106 Mich 250; 64 NW 18 (1895); *Dunwoody v Royal Indemnity Co,* 218 Mich 358; 188 NW 498 (1922); *Sima v Wright,* 268 Mich 352; 256 NW 349 (1934); *Grzelka v Chevrolet Motor Car Co,* 286 Mich 141; 281 NW 568 (1938); *Bryant v Biggs,* 331 Mich 64; 49 NW2d 63 (1951).

In order for a witness to give an opinion as to whether a person could have died within 24 hours of a particular disease if that person did not receive a particular drug, the witness must first be qualified as having sufficient knowledge of the effects of the disease if untreated and of the effects of the drug in arresting the disease.

"While the qualifications of an ordinary or nonexpert witness to give testimony as to the inferences he has drawn from the facts he has perceived are tested by the capacity of people generally to draw reliable conclusions from given facts, if the conclusion to be drawn is beyond such capacity and dependent on specialized knowledge, education, experience or training, the witness, if he has such special qualifications, testifies as an expert witness and not as an ordinary witness.

"For example, the untrained layman may be qualified to identify a substance from its appearance, its odor, the sense of touch, or its taste, if it is a familiar substance, but he could hardly be expected to state its specific gravity or its chemical content without showing that he had special qualifications to determine such matters. Or he may say that a person had a cold but could not without special qualifications generally diagnose disease or prescribe the treatment." 2 Jones on Evidence (6th ed), § 14:9, p 605.

In the instant case there was no foundation laid

to show that Mehaffey possessed expertise in either the area of drugs or respiratory illnesses. He was qualified solely as a dentist with expertise in the area of the tooth staining side effects of tetracycline.

Although the trial court was in error in admitting the disputed testimony, we do not find that the error was so prejudicial as to constitute reversible error.

We are persuaded that Mehaffey's disputed testimony was merely cumulative and that the error, therefore, was harmless.

Dr. Burton L. Perry, an instructor in the Department of Pediatrics and Communicable Diseases at the University of Michigan, was called by plaintiffs to testify as an expert witness. Dr. Perry was the former director of the Cystic Fibrosis Care, Research, and Teaching Center from 1963 to 1966 and had been involved in the treatment of plaintiff. Dr. Perry testified on direct examination that his own daughter who was then almost nine years old had "rather massive" amounts of tetracycline between the ages of one and three and did not have any staining.

On cross-examination Dr. Perry agreed that he would not expect most cystic fibrosis youngsters to live very long if untreated.

Dr. Perry also agreed that with reference to his own involvement as a physician with an infant who had pneumonia he would expect it to be at least a serious matter unless he gave the infant an antibiotic.

Further, Dr. Perry agreed that at the time the tetracycline was administered "tooth staining was not a severe enough indication to not use the declomycin [defendant's brand name for tetracycline]."

In addition Dr. Perry stated that it was true that in his deposition in this case he mentioned that he did not consider it important to have white teeth on a cadaver.

Finally, on redirect Dr. Perry testified that tetracycline probably prolonged Daniel Moore's life, but Dr. Perry could not say with any degree of certainty whether Daniel's life was saved.

Plaintiffs' third medical expert, Dr. Albert F. Schneider, a pathologist, testified on direct examination that because of the pathology of cystic fibrosis and because of the fact that many of the afflicted children died of pneumonia, it seemed logical to treat cystic fibrosis patients with antibiotics, such as tetracycline, for a long period of time in order to prevent the occurence of pneumonia.

In light of the fact that other witnesses in addition to Dr. Mehaffey testified to the lifesaving qualities of tetracycline balanced against its tooth staining side effects, we cannot say the result of the trial would have been different if Mehaffey had not testified. *Miskiewicz v Smolenski,* 249 Mich 63; 227 NW 789 (1929); *Rouse v Gross,* 357 Mich 475; 98 NW2d 562 (1959).

The decision of the Court of Appeals and the judgment of the trial court are affirmed.

Costs to the defendant.

T. M. KAVANAGH, C. J., and SWAINSON, WILLIAMS, LEVIN, M. S. COLEMAN, and J. W. FITZGERALD, JJ., concurred with T. G. KAVANAGH, J.