HOWELL v KING

1. EVIDENCE—DEAD MAN'S STATUTE—DEATH—INCOMPETENCY—PAR-
   TY'S OWN TESTIMONY—INCAPABLE OF TESTIFYING—TRAUMATIC
   AMNESIA—STATUTES.

   Death and incompetency are the only two bases for invoking the
   dead man's statute which renders inadmissible, in an action by
   or against a person incapable of testifying, a party's own
   testimony as to any matter which, if true, must have been
   equally within the knowledge of the person incapable of testify-
   ing, unless some material portion of his testimony is supported
   by some other evidence tending to corroborate his claim; the
   statutory phrase "incapable of testifying" should not be con-
   strued to include those who are unable to testify solely because
   of claimed traumatic amnesia (MCLA 600.2166; MSA
   27A.2166).

2. EVIDENCE—TRAUMATIC AMNESIA—QUESTION OF FACT—CROSS-EXAM-
   INATION.

   It is a question of fact whether or not a party to a lawsuit
   suffered from traumatic amnesia and, therefore, a proper sub-
   ject of inquiry on cross-examination of that party.

3. EVIDENCE—CROSS-EXAMINATION—DAMAGES—APPEAL AND ERROR—
   VERDICTS—NO CAUSE OF ACTION.

   Allowing a defendant's attorney to cross-examine a plaintiff on an
   issue pertaining solely to damages, if error at all, is not
   grounds for a reversal where the jury returned a verdict of no
   cause of action, because the challenged cross-examination could
   not have affected the verdict.

REFERENCES FOR POINTS IN HEADNOTES

[1] 81 Am Jur 2d, Witnesses § 357 et seq.
Competency, under dead man statute, of witness to testify as to
payment or nonpayment of an obligation owing to deceased
person. 84 ALR2d 1361.

[2] 81 Am Jur 2d, Witnesses § 139.

[3] 5 Am Jur 2d, Appeal and Error §§ 792, 809.

[4] 23 Am Jur 2d, Depositions and Discovery § 132.

4. EVIDENCE—DEPOSITIONS—MOTION TO STRIKE—READING DEPOSITION
   TO JURY—FAILURE TO OBJECT—APPEAL AND ERROR.
   Granting a defendant's motion to strike certain statements from
   a deposition of one of the plaintiffs' witnesses before the deposi-
   tion was read to the jury, where there had been no objection by
   defendant at the taking of the deposition, was harmless error,
   if error at all, where the stricken statements were cumulative
   with other statements in the deposition relating to the same
   issue.

Appeal from Macomb, Walter P. Cynar, J. Submitted June 7, 1977, at Lansing. (Docket No. 28544.) Decided August 8, 1977.

Complaint by Gurine Howell, for herself, and as the next friend of Linda M. Howell and Dianne L. Howell, minors, against Dennis G. King for damages resulting from an automobile accident. The Secretary of State, as Director of the Motor Vehicle Accident Claims Fund, intervened as a defendant. Judgment for defendants. Plaintiffs Linda M. Howell and Dianne L. Howell, now of age, appeal. Affirmed.

*Moore, Sills, Poling, Wooster, Charfoos, Sinn & Taylor, P. C.* (by *Charles R. Taylor* and *James M. Prahler),* for plaintiffs Linda M. Howell and Dianne L. Howell.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Joseph B. Bilitzke* and *Carl K. Carlsen,* Assistants Attorney General, for defendant Motor Vehicle Accident Claims Fund.

Before: DANHOF, C. J., and T. M. BURNS and A. E. KEYES,* JJ.

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

Danhof, C. J. Plaintiffs sought to recover for injuries sustained in an intersectional automobile collision. The Secretary of State, as Director of the Motor Vehicle Accident Claims Fund, intervened as a party defendant. The jury returned a verdict of no cause of action, and after denial of their motion for new trial plaintiffs claimed appeal.

Witness Quillen testified that as he turned east on to Nine Mile Road defendant's car also turned and passed him on the curb side accelerating at "full force". He testified that heavy rainfall limited visibility to about one block, and that he was driving at 33 to 37 miles per hour when defendant passed him traveling at a speed that he "conservatively" estimated at between 50 and 60 miles per hour. Defendant's car accelerated until it was about one and one half blocks ahead of Quillen and visible only in silhouette and by its taillights. When defendant's car reached the intersection of Nine Mile and MacArthur, its brake lights came on and it began to move at an angle. Mr. Quillen did not actually see the collision, but when he arrived at the intersection he observed that defendant's car had collided with plaintiffs' car.

Plaintiffs testified that they had no recollection of the accident, apparently owing to traumatic amnesia resulting from head injuries that each sustained in the accident.

Defendant testified that he was returning from a fishing trip with his cousin, Joseph Scott, and that he was proceeding eastward on Nine Mile at between 35 and 40 miles per hour when he began to slow down in anticipation of making a turn one block beyond the intersection where the accident occurred. Defendant testified that he had decelerated to 30 miles per hour, the posted speed limit at the location on Nine Mile, when he first observed

plaintiffs' car in the intersection of Nine Mile and MacArthur. Although he was maintaining a forward lookout, defendant was only 20 to 30 feet from the intersection when he first saw plaintiffs' car, which was already past the middle of the intersection and heading south. There was a stop sign at the intersection for cars traveling on MacArthur.

Joseph Scott was looking out the passenger window and did not actually observe the collision. He estimated that defendant was traveling at approximately 30 miles per hour immediately prior to the accident.

Testimony was completed on a Friday. The following Monday plaintiffs' counsel moved to strike that portion of defendant's testimony relating to his observation of the movement of plaintiffs' car. Plaintiffs' counsel argued that whether plaintiffs' car was moving in southerly direction when the accident occurred must necessarily have been a matter equally within the knowledge of plaintiffs, that, by reason of their traumatic amnesia, plaintiffs were "incapable of testifying" within the meaning of the dead man's act, MCLA 600.2166(1); MSA 27A.2166(1), and that therefore defendant's testimony on that point was inadmissible under the statute. The trial judge denied the motion to strike, and plaintiffs claim that this ruling was reversibly erroneous.[1]

---

[1] Plaintiffs' claim of reversible error is rendered colorable in part by the peculiar posture of the pleadings in this case. Defendant proceeded *pro se* in the initial phases of the case, and relied entirely on counsel for the Secretary of State to conduct the defense after the Secretary of State intervened. Apparently, however, defendant retained an attorney for the sole purpose of drafting a responsive pleading to avoid default. That attorney failed to raise the affirmative defense of contributory negligence in defendant's answer, as required by GCR 1963, 111.7, and accordingly the defense of contributory negligence was not an issue in this case. As a result, defendant's testimony as to his observations of plaintiffs' car is said to have

The dead man's act provides, in pertinent part, as follows:

"(1) In an action by or against a person incapable of testifying, a party's own testimony shall not be admissible as to any matter which, if true, must have been equally within the knowledge of the person incapable of testifying, unless some material portion of his testimony is supported by some other material evidence tending to corroborate his claim.

"(2) A 'person incapable of testifying' includes an individual who is incapable of testifying by reason of death or incompetency and his heirs, legal representatives, or assigns; and includes an individual, corporation, or other entity, or the successors thereof, whose agent, having material knowledge of the matter, is incapable of testifying by reason of death or incompetency." MCLA 600.2166; MSA 27A.2166.

Plaintiffs claim that, as a consequence of their traumatic amnesia, they were "incapable of testifying" within the meaning of the statute. Apparently plaintiffs would have us hold that "death or incompetency" are not the exclusive bases for holding a person "incapable of testifying" under the statute, since plaintiffs were clearly competent to testify.[2] We decline the invitation, for several reasons.

---

injected the issue of plaintiffs' contributory negligence, the more improperly because defendant's testimony was inadmissible under the dead man's act.

The issue of contributory negligence was not submitted to the jury, however, since the trial judge clearly instructed that "you must not consider whether there was contributory negligence on the part of the plaintiff Dianne Quigley or Linda Martinsen. That issue is not for your determination." The question remains, however, whether the refusal to strike that portion of defendant's testimony pertaining to the movement of plaintiffs' car in the intersection, pursuant to the dead man's act, was error.

[2] Plaintiffs testified extensively, but except for some testing by defense counsel on cross-examination of plaintiffs' claims that they could not recall the accident, their testimony was confined to the question of damages.

First, although the term "includes" in MCLA 600.2166(2) may be given a nonexclusive construction in an appropriate case, that term refers not to the bases for holding a person incapable of testifying, but to the class of persons who are also disqualified from testifying by reason of their relationship to the deceased or incompetent person who is in fact incapable of testifying. Thus the only two bases for invoking the statutory disqualification are "death or incompetency".

This interpretation of the statute best promotes the truth seeking function of trial. The dead man's acts have been the subject of much criticism, see, e.g., McCormick, Evidence (2d ed), § 65, p 143; Josephson, *Civil & Criminal Evidence,* 19 Wayne L Rev 281, 343 (1973), because they interfere with the fact finding process.[3] Foreseeably, the rule for which plaintiffs contend would encourage future plaintiffs, particularly plaintiffs whose claims would otherwise be vitiated by the taint of contributory negligence, to feign convenient loss of memory.[4]

"The statute prohibiting testimony equally within the knowledge of deceased should not be extended beyond its original meaning, nor should its scope be so widened as to bring about an absurd result." *Wilson v Prudential Insurance Co of America,* 276 Mich 232, 239; 267 NW 824 (1936).

---

[3] "Most commentators agree that the expedient of refusing the [sic] listen to the survivor is, in the words of Bentham, a 'blind and brainless' technique." McCormick, Evidence (2d ed), § 65, p 143. It is not our office to criticize the legislative appraisal of juror credulity, but neither is it our function to expand that appraisal at the expense of the fact finding process.

[4] In such cases the plaintiffs would reap the double benefit of sealing the defendant's lips and, at the same time, proceeding to the jury with the presumption of due care that the law affords to plaintiffs who have in fact sustained memory loss.

We conclude, therefore, that plaintiffs' contention is without merit, and decline to construe the statutory phrase "incapable of testifying" to include those who are unable to testify solely because of claimed traumatic amnesia.[5]

Plaintiffs next contend that the trial judge erred reversibly in permitting defense counsel to pose questions to plaintiff Linda Martinsen, nee Howell, on cross-examination that are said to have imputed to her acts of contributory negligence. We have examined the questions posed and find no error. The questions were designed to test Ms. Martinsen's claimed loss of memory, and as such they were proper. Whether plaintiff suffered from traumatic amnesia was a question of fact, *Knickerbocker v Samson,* 364 Mich 439, 448; 111 NW2d 113 (1961), and therefore a proper subject of inquiry on cross-examination. There was no error.

Plaintiff Dianne Quigley, nee Howell, in direct testimony clearly indicated that her injuries, which were admittedly serious, had interfered with her scholastic performance, preventing her from completing high school. On cross-examination she conceded that she had received failing marks in her 9th grade classes (the year before the accident) when confronted with her scholastic record. The record was not marked nor received in evidence, but the truth of its contents was not, and is not, disputed. Plaintiff's testimony was confined to the question of damages by reason of her claimed amnesia, however, and since the jury returned a verdict of no cause of action, the error, if any, in the manner in which defense counsel

---

[5] We note that even were we to hold otherwise, we would conclude that the trial judge properly denied plaintiffs' motion to strike. Testimony identical to that which plaintiffs sought to have stricken was held properly admitted in *Skiff v Dickens,* 38 Mich App 357, 359, 361; 196 NW2d 481 (1972).

conducted this cross-examination is not grounds for reversal, as it could not have affected the verdict. See *Durbin v K-K-M Corp,* 54 Mich App 38, 44; 220 NW2d 110 (1974).

Defense counsel failed to object at the time of deposition to four statements by witness Quillen, which the trial judge ordered stricken before Quillen's deposition was read to the jury.[6] Plaintiff now contends that by failing to object to these statements at the deposition defense counsel waived his objections, and that therefore the trial judge erred under GCR 1963, 308.3(2)[7] in granting the motion to strike. We disagree. This is not a case in which defense counsel's failure to object denied plaintiffs' counsel an opportunity to rephrase his questions to elicit unobjectionable responses. Quillen's testimony is studded not only with numerous estimates of defendant's speed, but also with other conclusory and speculative statements concerning defendant's rates of speed and acceleration that went unchallenged. Thus, even if it was error to strike the statements challenged—and such we doubt, see

---

[6] In the course of describing defendant's driving immediately prior to the accident, Quillen stated that defendant had accelerated past him, "I would say about as fast as a car could go"; that defendant must have been doing 55 miles per hour "because he went around me like I was setting [sic] still"; that defendant had to have been going more than 50 miles per hour, since he could not have got a block and a half ahead of Quillen, "without practically going twice my speed"; and that "I really think he was going faster, but I won't say that he was. I really think he was going much faster". The grounds asserted for striking the quoted portions of the above testimony were that it was unresponsive, speculative, conjectural, conclusory, contradictory, or opinion. Although the trial judge admitted Quillen's estimates of defendant's speed and other testimony that defendant accelerated "at full force", he ordered stricken the above statements in quotations.

[7] That section provides:

"Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition."

*Schalkofski v Lawrence,* 37 Mich App 686, 689–690; 195 NW2d 292 (1972), *Moore v Lederle Laboratories,* 42 Mich App 689, 695; 202 NW2d 481 (1972)—any error was assuredly harmless. The stricken testimony was cumulative. See *Moore v Lederle Laboratories,* 392 Mich 289, 296; 220 NW2d 400 (1974), *affirming* 42 Mich App 689; 202 NW2d 481 (1972).

Plaintiffs' final argument, that the verdict was contrary to the great weight of the evidence, is without merit. There was testimony that defendant had decelerated to the lawful speed before the accident occurred, and witness Quillen's own testimony reveals that he could not estimate defendant's speed at the time of the collision. The jury could have found that plaintiffs drove directly into the path of defendant's vehicle, which was traveling on a through street, and that the accident was unavoidable. Plaintiffs themselves had no knowledge, and offered no evidence nor testimony concerning the manner in which the accident occurred. Therefore we decline to disturb the jury's verdict.

Affirmed.