*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LILIYA KOMENDAT,

　　　　　Plaintiff-Appellant,

v

ANDREW GIFFORD and ROXANNE GIFFORD,

　　　　　Defendants,

and

HOME-OWNERS INSURANCE COMPANY,

　　　　　Defendant-Appellee.

FOR PUBLICATION
October 1, 2020
9:05 a.m.

No. 346990
Wayne Circuit Court
LC No. 15-013957-NI

Before: BECKERING, P.J., and FORT HOOD and SHAPIRO, JJ.

PER CURIAM.

In this action for uninsured motorist (UM) and personal protection insurance (PIP) benefits, plaintiff appeals two orders entered by the trial court: (1) a final judgment partially in favor of plaintiff, and (2) a "combined order" that granted plaintiff a small portion of the no-fault attorney fees she requested against defendant Home-Owners Insurance Company.[1] We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from injuries plaintiff suffered as a result of a January 22, 2015 motor vehicle accident. Plaintiff was a passenger in a vehicle struck by a car driven by Andrew Gifford and owned by Roxanne Gifford. Neither Roxanne nor Andrew had no-fault insurance. For some time,

---

[1] Although Andrew Gifford and Roxanne Gifford were also named defendants in this case, they were ultimately dismissed from the case. As such, "defendant" as used in this opinion refers only to Home-Owners Insurance Company.

defendant insurer paid various medical and transportation bills for plaintiff, totaling about $61,000, pursuant to her husband's insurance policy with defendant. On October 13, 2015, defendant refused to pay further benefits after receiving a physician's report following an insurance medical examination. The physician retained by defendant concluded that the injury suffered by plaintiff should have only required three to six months of treatment.

Plaintiff filed suit against defendant, seeking PIP benefits and UM coverage. Shortly after filing her complaint, plaintiff filed a request for admission asking defendant to admit that the Giffords' vehicle was uninsured at the time of the accident. Defendant denied the sought admission. Later, after some discovery but before trial, plaintiff moved for a "directed verdict" with respect to that issue, and as a result of that motion, defendant ultimately stipulated at trial to the fact that the vehicle was uninsured.

After the close of defendant's proofs at trial, plaintiff moved for a directed verdict with respect to defendant's failure to pay a prescription bill during the period of time that defendant was voluntarily paying plaintiff PIP benefits. The trial court granted the motion and awarded plaintiff $107.17 for the prescription bill and $38.57 in penalty interest. With respect to all other aspects of plaintiff's claims, the jury returned a verdict in favor of defendant. The jury found that the accident did not cause plaintiff to suffer from a serious impairment of an important body function, which negated plaintiff's UM claim, and found that plaintiff had not incurred any allowable PIP expenses in excess of what defendant had already paid.

Both parties subsequently filed a series of posttrial motions. Relevant to this appeal are plaintiff's motions seeking no-fault attorney fees under MCL 500.3148(1) and sanctions under MCR 2.313(C) for defendant's failure to admit prior to trial that the Giffords' vehicle was uninsured. Regarding the request for no-fault attorney fees, plaintiff relied on the directed verdict concerning the prescription bill and sought attorney fees of $235,000 based on the total amount of time her attorneys spent representing her in the case. Regarding the request for sanctions, plaintiff sought $25,000 for defendant's failure to admit that the Giffords' vehicle lacked insurance prior to trial.

On May 24, 2018, the trial court entered both a final judgment memorializing the results of trial—the directed verdict for the prescription bill and the jury verdict for no cause of action with respect to the other aspects of plaintiff's claim—and a "combined order" disposing of the parties' posttrial motions. The court ruled via the combined order that plaintiff was due no-fault attorney fees on the basis of the overdue prescription bill and the lack of evidence that defendant's failure to pay the bill was reasonable. The court next considered the proper amount of the fee to be assessed and concluded that $4,688.75 was a reasonable attorney fee. The court then declined to sanction defendant for failing to admit that the vehicle was uninsured prior to that evidence becoming available. The court ruled that, although most everyone involved in the case *believed* the Giffords' vehicle was uninsured, that fact was not conclusively known until long after defendant declined plaintiff's request to admit.

Plaintiff now appeals both the final judgment and the combined order. Plaintiff argues with respect to the final judgment that the trial court abused its discretion by admitting deposition testimony from defendant's three medical experts at trial and by giving a spoliation instruction to the jury with respect to a replacement-services calendar that was once in plaintiff's possession.

With respect to the combined order, plaintiff contends that the trial court abused its discretion by awarding plaintiff only a portion of the attorney fees she requested and by failing to sanction defendant for its failure to admit.

## II. JURISDICTION

We begin by considering defendant's argument that appellate jurisdiction in this case is limited to plaintiff's claim for attorney fees. Defendant asserts that, although plaintiff filed her claim of appeal within 21 days of entry of the trial court's order denying plaintiff's timely motion for reconsideration, the motion for reconsideration related only to the issue of attorney fees in the combined order, and not the final judgment. Defendant's argument is premised on the idea that the combined order is "a postjudgment order awarding or denying attorney fees and costs" pursuant to MCR 7.202(6)(a)(iv), and is therefore a final order distinct from the final judgment. We do not agree. While language from the combined order that "this case remains closed by the final judgment entered May 24, 2018," could be read to infer that the final judgment was entered before the combined order, one could also read the register of actions as suggesting that the combined order was entered first. In any event, for jurisdictional purposes, given that the final judgment and the combined order together disposed of the remaining issues in the case, and given that the two orders were undoubtedly entered at or around the same time, we are not convinced by defendant's suggestion that we must treat the combined order as a postjudgment order awarding attorney fees under MCR 7.202(6)(a)(iv). Accordingly, we find that we have jurisdiction and turn to review of the issues raised in plaintiff's briefing.

## III. EXPERT TESTIMONY

Plaintiff first contends that the trial court erred when it denied her motion to preclude the admission of the deposition testimony of defendant's three medical experts because a proper foundation was not laid in refreshing the witnesses' recollections at their respective depositions. We disagree.[2]

MRE 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." See also *Citizens Nat'l Bank of Cheboygan v Mayes*, 133 Mich App 808, 812; 350 NW2d 809 (1984). So long as a proper foundation is laid, one manner of establishing a witness's personal knowledge is to have the witness's memory refreshed by a writing or similar document. *Genna v Jackson*, 286 Mich App 413, 423; 781 NW2d 124 (2009). "To lay a proper foundation, the proponent must show that (1) the witness's present memory is inadequate, (2) the writing could refresh the witness's present memory, and (3) reference to the writing actually does refresh the witness's present memory." *Id*. Plaintiff asserts that the third element was never established with

---

[2] A trial court's evidentiary rulings are reviewed for an abuse of discretion. *Haberkorn v Chrysler Corp*, 210 Mich App 354, 362; 533 NW2d 373 (1995). "An abuse of discretion occurs when the court's decision falls outside the range of principled and reasonable outcomes." *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008).

the three witnesses at issue, and accordingly, their deposition testimony should not have been admitted at trial. We reject plaintiff's argument for two reasons.

First, it is not clear that any error occurred. Defendant presented the witnesses with the reports that they had authored and asked whether review of the reports "would" refresh their recollection as to their examinations of plaintiff and their findings. Each witness responded in the affirmative. When viewed in context, these responses established, at least by implication, that the witnesses' memories had been refreshed upon review of their respective reports. For example, one expert, Dr. Porter-Grenn, testified:

> The date of my narrative report is approximately two years prior to today's date, so, of course, I would want to review it. And I copied it, downloaded it, and printed it out, yesterday, went through it, and refreshed all my memory of the case. And it's not that difficult to do. You know, once you do have the report, it's not difficult to remember the facts.

The other two experts each testified that review of their respective reports would refresh their recollections.

In addition, plaintiff did not make clear the basis for her objection to the use of the reports to refresh recollection. A hearsay objection without further explanation was made during the direct examination. It was only after defense counsel completed his direct examination of each witness that plaintiff raised a foundational objection on the basis of defendant's failure to properly refresh the witnesses' recollections. And it was not until plaintiff filed a pretrial motion to exclude the doctor's testimony that the basis for the objection was made clear, i.e., that defendant failed to explicitly ask the experts whether the medical evaluations actually *did* refresh their memories.

MCR 2.308(C)(3)(a) provides:

> Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of a deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

We have held before that "[a]n objection that counsel . . . has failed to lay a proper foundation for questions asked falls within the category of formal objections that may be obviated during the taking of the deposition." *Moore v Lederle Laboratories*, 42 Mich App 689, 693; 202 NW2d 481 (1972), aff'd 392 Mich 289 (1974). Had plaintiff raised her objections with specificity while defendant was examining its witnesses—or better, while defendant was laying the foundation for its witnesses' testimony—the omission could have been readily cured.

With all of the above in mind, we conclude that the trial court did not abuse its discretion in admitting the deposition testimony of defendant's experts because, on review of the testimony at issue, it was not outside the range of reasonable and principled outcomes to hold that the witnesses' memories had, in fact, been refreshed by their respective evaluations.

## IV. SPOLIATION

Plaintiff also argues that the trial court erred when it provided a spoliation instruction to the jury with respect to plaintiff's failure to produce calendars that purportedly documented the household services her husband performed while plaintiff was unable to do so. We see no error in the court's decision to give the instruction.[3]

At trial, plaintiff testified that she had made some calendars that kept track of the household and attendant-care services her husband had performed, but that she no longer had them and either lost them or disposed of them without realizing it. Later, on defendant's request, the trial court gave a spoliation instruction to the jury that read as follows:

> The Plaintiff in this case has not offered any written calendars as to services her husband performed. As this evidence was under the control of the Plaintiff and could've been produced by her, you may infer that the evidence could've been adverse to the Plaintiff if you believe that no reasonable excuse for Plaintiff's failure to produce the evidence has been shown.

On appeal, plaintiff primarily argues that the instruction was improper because there were multiple ways in addition to the use of the calendars to prove the fact that her husband had rendered household and attendant-care services. Plaintiff cites no authority, however, in support of the proposition that merely because there are other avenues to prove a fact, a spoliation instruction is not proper. A "litigant is under a duty to preserve evidence that it knows or reasonably should know is relevant to [an] action," *Brenner v Kolk*, 226 Mich App 149, 162; 573 NW2d 65 (1997), and failure to preserve that evidence can result in a sanction in the form of a spoliation instruction, *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 24; 930 NW2d 393 (2018).

Moreover, as the use note contained in the model jury instruction indicates, a spoliation instruction is warranted if the evidence that is the subject of the instruction is (1) material, (2) not merely cumulative, and (3) not equally available to the opposite party. M Civ JI 6.01. The calendars at issue here, which purportedly were written contemporaneously with plaintiff's husband providing the at-issue services, clearly were material. Also, because they were prepared in "real time," they could have shown that some of plaintiff's testimony was inaccurate or at least provided more detailed information. Finally, it is undisputed that the calendars were not available to defendant. Thus, because the only question of fact that existed with regard to the calendars was

---

[3] In general, preserved claims of instructional error are reviewed de novo, and reversal is only warranted when the failure to do so would be inconsistent with substantial justice. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). However, an instruction concerning "spoliation of evidence may be disturbed only upon a finding that there has been a clear abuse of discretion." *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997). "An abuse of discretion occurs when the court's decision falls outside the range of principled and reasonable outcomes." *Guerrero*, 280 Mich App at 660.

whether plaintiff had a reasonable excuse for disposing of them, the trial court did not abuse its discretion by giving the jury instruction.[4]

## V.  NO-FAULT ATTORNEY FEES

Plaintiff next argues that the trial court erred when it awarded only a small portion of the no-fault attorney fees she requested.  We agree that the trial court failed to properly determine the amount of a reasonable fee and that its analysis was not consistent with the process outlined by the Supreme Court in *Pirgu v United Servs Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016), *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476; 673 NW2d 739 (2003), and *Moore v Secura Ins*, 482 Mich 507; 759 NW2d 833 (2008).  Accordingly, we vacate the fee determination and remand for further proceedings consistent with the procedure described below.[5]

MCL 500.3148(1) provides that in a PIP case the plaintiff's attorney fee may be assessed against the insurer if the jury finds that benefits are overdue and the court concludes that those benefits were unreasonably delayed or denied:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue.  The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.  [MCL 500.3148(1).]

In *Pirgu*, 499 Mich at 281, the Supreme Court defined a three-step process by which a trial court is to determine a reasonable attorney fee for purposes of MCL 500.3148(1).  First, the trial court must "begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services."  *Id*.  Second, having determined the proper hourly rate, "[t]he trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure."  *Id*.  Third, "the trial court must consider all of the remaining *Wood*[6]

---

[4] We also note that plaintiff's assertion that the instruction gave the impression that she had done something wrong, and therefore "poisoned" the jury against her, is without merit.  The jury instruction on its face simply states that *if* the jury finds that plaintiff had no reasonable excuse to dispose of the calendars, then the jury could make an adverse inference regarding the calendars.  The instruction leaves that determination solely up to the jury without suggesting how the question should be decided, and the mere fact that the court *allowed* the jury to consider the question does not impermissibly taint or poison a jury.  Thus, even assuming it was erroneous for the court to provide the instruction, reversal would not be warranted because plaintiff has failed to show how the error was inconsistent with substantial justice.  See *Case*, 463 Mich at 6.

[5] We review the amount awarded for attorney fees for an abuse of discretion.  See *Moore*, 482 Mich at 516.  However, questions of law, including the interpretation and application of a statute, are reviewed de novo.  *Id.*

[6] *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982).

-6-

and MRPC 1.5(a) factors to determine whether an up or down adjustment [of the baseline fee] is appropriate." *Id.* The Court summarized those eight factors as follows:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [*Id.* at 282.]

In this case, the trial court properly began its analysis by determining the reasonable hourly rate. However, the court then conflated the next two *Pirgu* steps by considering the eight factors before determining the baseline number of hours and the baseline fee. In addition, the basis for the number of hours selected (15.5) does not appear to be related to any demonstrable analysis based on the record and the events in the case. The court simply stated that 15.5 hours "would have been reasonably and necessarily expended in advising and representing plaintiff for her overdue prescription drug benefit." The court then multiped what it found to be the reasonable number of hours by the reasonable hourly rate to arrive at an attorney fee award of $4,688.75.[7]

Plaintiff argues that the baseline fee should be based on 645 hours, which represents the total number of hours her attorneys expended in the entire case. Such an approach is consistent with the language of the statute. The statute states that "[a]n attorney *is entitled* to a reasonable fee for advising and representing a claimant *in an action* for personal or property protection benefits which are overdue." MCL 500.3148(1) (emphasis added). Typically, a suit involves multiple denials of benefits; individual suits are not filed as to each particular denial. Moreover, because the time for payment is 30 days after reasonable proofs, by the time of trial, if the jury

---

[7] Defendant suggests that this is a generous attorney fee award because it is a greater portion of the sought fee than is the amount of the overdue benefit in relation to the entire claim. No case has held that an attorney fee should be calculated on the basis of such a comparison. First, a pro rata approach has nothing to do with the time spent by the attorney, which is the first *Pirgu* step. Second, it ignores the intermingling of the claims in the case. Third, such an approach would provide for different results based solely on the total amount of the initial claim in relation to the amount overdue.

finds that plaintiff is owed the benefits, the overwhelming majority of the benefits will be overdue. See MCL 500.3142(2).

Further, the first sentence of MCL 500.3148(1) does not say that recovery of attorney fees depends on how successful the action is—it merely states that the action must seek benefits that are overdue. The second sentence limits recovery as follows: "The attorney's fee is a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay *the claim* or unreasonably delayed in making proper payment." MCL 500.3148(1) (emphasis added). This sentence does not provide a mechanism to reduce the amount of the attorney fee. It simply states that for attorney fees to be granted, the court must find that the failure to pay the claim was unreasonable. The use of the word "the" means there is only one claim, i.e., the entire action. If defendant has failed to pay a part of a claim, it has failed to pay the claim.

However, although the words "attributable to" does not appear in the statute, the Supreme Court held in *Proudfoot*, 469 Mich at 485, that recoverable attorney fees are limited to those "attributable to" recovery of the overdue benefits. Following *Proudfoot*, in *Moore*, 482 Mich at 516, the Court held that the plaintiff was not entitled no-fault attorney fees when "none of the attorney fees were attributable to the overdue benefit."[8]

Considering these two cases along with the later decided *Pirgu*, we conclude that we must harmonize the requirement that the fee reflect the number of hours expended "in an action" for overdue benefits with the requirement that the time be "attributable to" recovery of the overdue benefits. Doing so is further complicated because, although *Proudfoot* and *Moore* used the phrase "attributable to," they gave no direction about *how* to determine what attorney services are attributable to the overdue benefits. Defendant would have us read these cases to insert the word "only" into *Proudfoot*'s holding, i.e., the attorney time must be "attributable *only* to" the overdue benefits. Under this approach, time that was spent in service of the case as a whole would not be counted. We disagree and conclude that attorney services that supported other aspects of the case, as well as the overdue benefits, should be included as they are attributable to the overdue benefit claim even if not exclusively so. However, the baseline attorney time should not include time spent on other aspects of the claim that were not relevant to the unreasonably denied benefits. For instance, a motion relevant only to benefits that were reasonably denied should not be included, but a motion that relates to the entire case or, at least some benefit found to be unreasonably denied, should be.[9] In sum, all reasonable attorney time in an action that recovers an overdue benefit

---

[8] In *Moore*, the plaintiff did not attribute any of the sought attorney fees to recovery of the overdue benefit, which the defendant paid before trial. *Moore*, 482 Mich at 523. Moreover, the Court held that the defendant had a reasonable basis to have denied the only benefit that the jury found to be overdue, and thus the plaintiff was not entitled to attorney fees. *Id*. at 523-525. The case provided no guidance as to how to calculate a reasonable attorney fee or the "baseline figure," which is at issue here.

[9] Consider, by way of example, a plaintiff who suffers a neck injury and a foot injury in the same accident and files suit seeking benefits denied for both injuries. If it is found that the claimed

unreasonably withheld should be included in the baseline number of hours *unless* those services were dedicated solely to the recovery of benefits that were found not overdue, in which case that time was not attributable to recovery of the overdue benefit.

Defendant's argument fails to account for the reality of litigation in which different benefits and evidentiary relevance are routinely intermingled and cannot be unmingled. For the most part, the work of an attorney serves the entire case and is not divisible by particular aspects of the case. For instance, depositions of lay and expert witnesses will cover many topics, including general information applicable to all unpaid benefits, and an attorney's time will be not readily divisible to specific benefits. The same will be true of discovery and dispositive motions that are relevant to multiple sought benefits.

We confronted a similar issue in *Tinnin v Farmers Ins Exch*, 287 Mich App 511, 521; 791 NW2d 747 (2010), in which we explicitly rejected the insurer's argument that for attorney time to be compensable under MCL 500.3148(1) it must be "*directly* attributable to securing" the overdue benefit. (Emphasis added). In that case, the jury determined that the insurer wrongfully denied payment for office visits related to physical and medical rehabilitation (PM & R) treatment, but it awarded no recovery for the sought attendant-care services. *Id*. at 514. The trial court, however, awarded the plaintiff the full amount of the requested attorney fee. *Id*. As we explained, "the trial court found that all of the attorney's time for which plaintiff sought compensation was sufficiently related to securing the overdue benefits compensable under MCL 500.3148(1)," even though some benefits were properly denied. *Id*. at 521. We found no support in MCL 500.3148(1) for the insurer's argument that apportionment was required. *Id*. at 522.

Thus, in *Tinnin*, we rejected the notion that attorney services must be solely directed at overdue benefits to be compensable. Instead, we concluded that all of the attorney time in that case was "sufficiently related" to the recovery of the overdue benefit. To be clear, the caselaw does not require that an attorney's time be solely or even primarily related to the overdue benefits. Nor does it require the trial court, as occurred in this case, to speculate as to the number of hours that would have been spent if the plaintiff had sought payment only for the benefits that were found to have been unreasonably denied. Such an exercise is clearly speculative and is untethered to what took place in the actual, rather than hypothetical, litigation.

In sum, in determining the baseline fee in accordance with *Pirgu*, the court is to include all attorney time that was relevant to recovery of the overdue benefit, even if that time was also relevant to other aspects of the case. Attorney time that was related only to other aspects of the action, and did not bear on the benefits unreasonably withheld, should be excluded from the baseline. Any further limitation on the baseline number of hours would be difficult to square with *Pirgu*, the statute, or with the principle that the no-fault act's provisions should be liberally

---

benefits as to the neck injury were not unreasonably denied, but benefits for treatment of the foot injury were unreasonably denied, work attributable only to litigating the neck injury need not be included in the baseline fee. However, if the work was in service of obtaining benefits for both injuries, then that time should be included in the baseline fee.

construed in favor of the intended beneficiaries. *Farmers Ins Exch v AAA of Mich*, 256 Mich App 691, 695; 671 NW2d 89 (2003).

Remand is necessary in this case so that the trial court can properly calculate the reasonable number of hours and the baseline fee consistent with this opinion. After doing so, the trial court may adjust that figure based on the factors outlined in *Pirgu*, including the "the amount in question and the results obtained" in the case as a whole. *Pirgu*, 499 Mich at 282.

## VI. SANCTIONS FOR FAILURE TO ADMIT

Finally, plaintiff contends that the trial court erred when it denied sanctions on the basis of defendant's negative response to plaintiff's request to admit that the Giffords' vehicle was not insured. We disagree.[10]

"Pursuant to MCR 2.312(A), a party in a civil case may request certain admissions from the other party before trial." *Midwest Bus*, 288 Mich App at 350. MCR 2.313(C) provides:[11]

> If a party denies the genuineness of a document, or the truth of a matter as requested under MCR 2.312, and if the party requesting the admission later proves the genuineness of the document or the truth of the matter, the requesting party may move for an order requiring the other party to pay the expenses incurred in making that proof, including attorney fees. The court shall enter the order unless it finds that
>
> (1) the request was held objectionable pursuant to MCR 2.312,
>
> (2) the admission sought was of no substantial importance,
>
> (3) the party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or
>
> (4) there was other good reason for the failure to admit.

Plaintiff filed the instant complaint on October 28, 2015, alleging in part entitlement to UM benefits pursuant to the insurance policy plaintiff's husband had with defendant. Not long after, plaintiff asked defendant to admit, among other things, that "neither Defendant Andrew Gifford nor the vehicle that he was operating at the time of the complained of motor vehicle accident [were] properly insured." On January 6, 2016, defendant responded as follows:

---

[10] We review for an abuse of discretion a trial court's decision on a request for sanctions under MCR 2.313(C). *Midwest Bus Corp v Dep't of Treasury*, 288 Mich App 334, 349-350; 793 NW2d 246 (2010). "An abuse of discretion occurs when the court's decision falls outside the range of principled and reasonable outcomes." *Guerrero*, 280 Mich App at 660.

[11] MCR 2.313(C) was amended effective January 1, 2020. The quoted version is the version that was in effect during the trial court proceedings.

Objection. This Request to Admit is vague and overbroad in the form and manner stated, and the information known or readily obtainable to Defendant is insufficient to enable Defendant to admit or deny the Request. Without waiving said objection, and to the extent that a response is required, Defendant denies the Request.

Defendant's objections are without merit as the request was neither vague nor overbroad. However, we conclude that defendant's refusal to make an affirmative admission regarding the Giffords' insurance status was not improper given its statement that it lacked sufficient information to either affirm or deny the request.

The record indicates that conclusive evidence regarding the proper owner of the vehicle in question was not uncovered until November 2017. This evidence only became known following the deposition testimony of the Giffords and the individual that sold them the vehicle. And, while defendant was aware of a police report from the date of the accident mentioning that the vehicle was uninsured, this hearsay information was not of the character to make a contrary conclusion beyond the realm of reasonable possibility. To require a party to admit to such a fact under those circumstances is not consistent with the effect of the court rule, which is to make the admitted fact "*conclusively* established." MCR 2.312(D)(1) (emphasis added). Accordingly, we find no error.

## VII. CONCLUSION

The trial court failed to correctly calculate a reasonable attorney fee. We reject all other arguments raised in plaintiff's appeal.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood
/s/ Douglas B. Shapiro

-11-